# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1002

_____

| | | |
|---|---|---|
| Duane Thiel, | * | |
| | * | |
| Petitioner-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Timothy Schuetzle, | * | |
| | * | |
| Respondent-Appellee. | * | |

_____

Submitted:  October 20, 1999

Filed:  December 21, 1999

_____

Before WOLLMAN, Chief Judge, LAY, and LOKEN, Circuit Judges.

_____

LAY, Circuit Judge.

Duane Thiel (Thiel) was convicted by a jury for the murder of his brother, Warren Thiel (Warren), and was sentenced to fifteen years minus 249 days for time served at the North Dakota State Penitentiary.  The Supreme Court of North Dakota affirmed his conviction in State v. Thiel, 515 N.W.2d 186 (N.D. 1994).  Thiel petitioned the district court for a writ of habeas corpus under 28 U.S.C. § 2254, arguing insufficiency of the evidence and alleging a due process violation based on alleged perjury by one of the State's witnesses, Michael Hunter (Hunter).  Pursuant to the

magistrate judge's[1] recommendation, the district court[2] denied the petition. Finding the remaining evidence to be sufficient, the district court gave "little or no weight" to Hunter's testimony and held that, even if Hunter lied on the stand, there was not a reasonable likelihood that it affected the outcome of the trial because his character was effectively impeached.

This court granted a certificate of appealability on the issue of the sufficiency of the evidence. In this appeal, Thiel emphasizes comments made by the Assistant State's Attorney for Morton County, North Dakota, which suggest that Hunter's testimony was indispensable to the prosecution's case because the rest of the evidence against Thiel was circumstantial and less probative of guilt.[3] Thiel contends that these statements, along with the district court's rejection of Hunter's testimony and the alleged weakness of the remaining evidence, require a finding that the evidence against him was insufficient to support his conviction.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(1)-(2) (Supp. 1999) (AEDPA), this court is restrained from granting a habeas petition unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . ." or "resulted in a decision that was based on an unreasonable

---

[1]The Honorable Dwight C. H. Kautzmann, United States Magistrate Judge for the District of North Dakota, presiding.

[2]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota, presiding.

[3]These statements are found in the "Government's Substantial Assistance Motion and Sentencing Recommendation" submitted in support of a sentencing reduction for Hunter in an unrelated case in the State of Washington. The crux of the motion was that because Hunter was instrumental in Thiel's conviction, he [Hunter] was entitled to a sentence below the otherwise appropriate guideline range.

determination of the facts in light of the evidence presented in the State court proceeding." Prior to the passage of the AEDPA, the standard of review for sufficiency of the evidence in a habeas proceeding was "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Under either standard, we find the evidence offered at trial was sufficient to uphold Thiel's conviction. Warren's body was found covered with a blanket, which was circumstantial evidence that the murderer was a family member or friend. (Trial Tr. 86, 137, 183.) Thiel asked officers on the scene of the crime "who shot my brother?" before the police had released the fact that Warren was shot. (Trial Tr. 147, 170-71.) Thiel told an acquaintance in a bar that his brother was shot twice three days before the police or coroner had made that determination.[4] (Trial Tr. 501-05.) He also told the medical liaison officer at the Morton County Correctional Center "there is more going on than you know," and "I ain't the only one." (Trial Tr. 442.) Moreover, upon discovering that his brother was dead, Thiel reportedly showed no remorse and started laying claim to his brother's possessions shortly thereafter. (Trial Tr. 93, 210.) Finally, after his detainment, Thiel reportedly confessed to the crime to his cellmate, Michael Hunter. Hunter testified to this at trial. (Trial Tr. 356.)

On appeal, Thiel argues, based on the district court's rejection of Hunter's testimony, that Hunter perjured himself, and he asks this court to assume the same. Thiel bases the assumption of perjury on the thorough impeachment of Hunter by his prior record. Nevertheless, there was no finding by any court considering Thiel's case that Hunter lied on the stand. Hunter's testimony regarding Thiel's jailhouse confession, along with impeachment testimony regarding Hunter's prior criminal record, was submitted to the jury, and the weight the jury gave to that evidence is

---

[4]Warren was shot once in the head and once in the chest. However, the police did not detect the chest wound until after the autopsy because of the profuse amount of blood from the head wound. (Trial Tr. 228-29.)

inherent in its verdict. As such, the federal district court was in error in giving little or no weight to Hunter's testimony. See Haymon v. Higgins, 846 F.2d 1145, 1147 n.4 (8th Cir. 1988) (rejecting insufficiency of the evidence claim based on inconsistencies in testimony offered to jury, and stating that "[i]t is not the function of the reviewing federal court to reweigh the evidence or determine questions of credibility"). Seemingly, the district court assumed that Hunter lied but determined there was sufficient evidence to convict Thiel independent of Hunter's testimony. However, since there was no finding by either the state trial or state appellate courts that Hunter's testimony was perjured as a matter of law, the district court lacks the authority to assume such. Even a felon can tell the truth, and notwithstanding his impeachment, it was for the trier of fact to determine whether his testimony was credible or not. The North Dakota Supreme Court properly considered Hunter's testimony, and we must do the same in determining the sufficiency of evidence.

The thrust of Thiel's claim in this appeal is that the State should have disclosed that Hunter would be given a reduction in sentence in exchange for testifying so that Hunter could be further impeached. First, we note that this issue was not certified for appeal. The only issue certified for appeal related to the sufficiency of the evidence. Regardless, even if one could argue that Hunter's impeachment was intertwined with the sufficiency of the evidence, we would reject the claim. The prosecutor in North Dakota neither promised nor delivered assistance with Hunter's charges in Washington. Similarly, the prosecutor had no duty to examine Hunter about any agreement he might have with authorities in Washington. Any understanding between Hunter and the State of Washington was collateral to the case at hand since there was no showing by Thiel that the prosecutor had any involvement in the agreement. "While the government may not turn a blind eye to doubts about the veracity of testimony presented by its witnesses, there is no obligation to investigate every collateral matter raised by a witness's trial testimony." English v. United States, 998 F.2d 609, 611 (8th Cir. 1993). There is nothing in the present record that shows that the North Dakota prosecutor

made a "deal" with Hunter before or after Thiel's trial.[5] Moreover, Thiel made no attempt to inquire of the Washington authorities as to any negotiated plea bargain with Hunter, despite the fact that the record shows both the prosecutor and defense counsel knew of the Washington charges when Hunter was deposed before trial.[6]

---

[5]Hunter pled guilty to the Washington charges approximately nine days after testifying at Thiel's trial. The government's motion for reduction of the Washington sentence was filed less than two months later. The assistant prosecutor's statements were received by the Washington authorities in the interim.

[6]At Thiel's trial, Hunter was cross-examined by Thiel's attorney concerning the Washington charges:

Q. So you got on the streets here in North Dakota and you go back toWashington. What is the first thing you do? You make threats against a judge and prosecutor. That is an allegation that has yet to be proven?

A. No, but it's going to be no plea of guilty involved.

Q. They're going to drop it?

A. That's right.

Q. We are supposed to take your word for it that you are not getting any assistance out there because of your testimony here?

A. Federal authorities don't care.

Q. How about the federal authorities there? They're just going to drop this threat against a judge and prosecutor for no reason?

A. Because they don't want to prosecute me.

Q. Why?

A. They don't have a valid case as far as I am concerned.

While we agree that the jury witnessed a severe attack on Hunter's character during trial, and the attack negatively affected the value of his testimony, we cannot dismiss Hunter's testimony altogether. Thiel's examination of Hunter regarding the alleged negotiated deal in Washington merely added further grounds for impeachment. See United States v. Saulter, 60 F.3d 270, 274-75 (7th Cir. 1995) (rejecting argument that evidence was insufficient because it rested so heavily on severely impeached witnesses); United States ex rel. Henderson v. Hardy-Hall, No. 95-C-0486, 1995 WL 387823, at *3 (N.D. Ill. June 28, 1995) (mem.) (rejecting challenge to sufficiency of evidence based on inconsistencies between witness' testimony and undisputed facts); Rahman v. Reid, No. 85 Civ. 188, 1986 WL 10489, at *5 (S.D.N.Y. Sept. 12, 1986) (rejecting challenge to sufficiency of the evidence based on inconsistencies in trial testimony and noting that the inconsistencies were brought to the jury's attention and effectively acted as impeachment evidence). Thus, we find, as did the state and federal courts that reviewed this issue before us, that another allegation of untruthfulness on the part of Hunter would not have resulted in an acquittal for Thiel.

In conclusion, based on the overall record, which includes Hunter's testimony, we find no constitutional error. Judgment AFFIRMED.

---

Q. There has never been a valid case against you, has there been?

A. There has been.

Q. You have appealed everything you have ever had?

A. Yah.

(Trial Tr. 370-71.)

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.