STATE of Wisconsin,
Plaintiff-Appellant,

v.

Bill Paul MARQUARDT,
Defendant-Respondent.

STATE of Wisconsin,
Plaintiff-Respondent,

v.

Bill P. MARQUARDT,
Defendant-Appellant.

Supreme Court

*Nos. 2004AP958–CR, 2004AP1609–CR.*
*Oral argument September 9, 2005.*
*—Decided November 23, 2005.*

2005 WI 157

(Also reported in 705 N.W.2d 878.)

204

For the State of Wisconsin the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For Bill Marquardt there were briefs by *John Brinckman* and *John Brinckman SC,* La Crosse, and *Patricia A. Fitzgerald* and *Patricia A. Fitzgerald Law Office,* Mt. Horeb and oral argument by *Patricia A. Fitzgerald* and *John M. Brinckman.*

¶ 1. ANN WALSH BRADLEY, J. The court of appeals certified this consolidated criminal appeal in

two circuit court cases involving the same defendant, Bill Paul Marquardt. In one case, the State appeals an order of the Chippewa County Circuit Court suppressing evidence obtained in a search of Marquardt's cabin and an order denying the State's motion for reconsideration of the suppression order. In the other case, Marquardt appeals an order of the Eau Claire County Circuit Court denying his motion for post-commitment relief in which he had renewed an earlier challenge to the same search.[1]

¶ 2. The court of appeals certified the following questions regarding the good faith exception to the exclusionary rule:

(1) Does the search warrant application in this case meet the third test set out in *United States v. Leon,* 468 U.S. 897 (1984), that it must not be so lacking in indicia of probable cause as to render the officers' belief in its existence entirely unreasonable?

(2) Did the investigation in these cases meet the "significant investigation" test set out in *State v. Eason,* 2001 WI 98, ¶ 63, 245 Wis. 2d 206, 629 N.W.2d 625?[2]

---

[1] Judge Roderick A. Cameron presided over proceedings in the Circuit Court for Chippewa County; Judge Eric J. Wahl presided over proceedings in the Circuit Court for Eau Claire County.

[2] The certification contained four additional questions:

(1) When considering the issue of whether a search warrant application meets the third test set out in *United States v. Leon,* 468 U.S. 897 (1984), may the court consider facts known by police officers but not included in the search warrant application?

(2) Does the doctrine of inevitable discovery apply if the officers had additional information not included in the warrant application that could have been used to secure a valid search warrant if the initial application had been denied, and did the

¶ 3. We determine that the affidavit in support of the warrant contains indicia of probable cause sufficient to meet the *Leon* test and that the facts here demonstrate a significant investigation pursuant to *Eason*. We therefore conclude that the good faith exception to the exclusionary rule applies to the search of Marquardt's cabin. Additionally, we reject an assertion by Marquardt that the circuit court erred in finding him not competent to represent himself in the Eau Claire County case.

¶ 4. Accordingly, we reverse the Chippewa County Circuit Court orders and affirm the Eau Claire County Circuit Court order. We remand to the circuit court in each case for further proceedings consistent with this opinion.

I

¶ 5. On March 13, 2000, Marquardt's father discovered the dead body of his wife, Marquardt's mother, in their Chippewa County home. She had been shot and stabbed.

---

officers have sufficient untainted information to secure a warrant before the evidence might have been lost or destroyed?

(3) Does the doctrine of inevitable discovery apply when additional investigation would likely have resulted in a valid search warrant, but the investigation may have taken five to eight days after the initial illegal search?

(4) What assumptions can be made about the inevitability of finding evidence after substantial delay when the record shows no attempt by the defendant to hide or destroy evidence?

Because we determine that the affidavit in support of the warrant in this case contained sufficient indicia of probable cause and that the officers conducted a significant investigation here, we need not address these additional certified questions.

¶ 6. That same day, law enforcement officers obtained and executed a warrant to search the home. Within two days of the discovery of the body, an estimated 20 law enforcement officers, including State Department of Justice agents, became involved in an extensive investigation of the crime.

¶ 7. On March 15, officers obtained and executed a search warrant for an Eau Claire County cabin in which Marquardt had been staying. According to the warrant application, Marquardt's father told Investigator Richard Price that Marquardt had not been seen or heard from since the location of his mother's body. The warrant application also noted that the body was covered in a blanket.[3]

¶ 8. As a result of the March 15 search of Marquardt's cabin, officers found three dog carcasses and three rabbit carcasses. They also found, among other evidence, sections of bloodstained carpet, a bloodstained quilt, a bloodstained tarp, two rifles, and a large knife with a sheath. Marquardt was charged in Eau Claire County with mistreatment of an animal resulting in the animal's death, and a warrant issued for his arrest.[4]

¶ 9. On March 18, officers arrested Marquardt outside his cabin. During a search incident to arrest, they found a folding knife and noticed blood spatters on

─────────────

[3] Some of the information in the March 15 warrant application came from the March 13 search warrant. The March 15 application incorporated and attached a copy of the March 13 warrant.

[4] Marquardt was ultimately charged with ten felonies in Eau Claire County, including seven counts of mistreatment of an animal resulting in the animal's death, two counts of possession of a firearm by a convicted felon, and one count of aggravated burglary, all as a repeater.

Marquardt's shoes and jacket. Subsequent crime lab testing indicated that the DNA found in the blood on Marquardt's folding knife and one of his shoes was a match for his mother's DNA.

¶ 10. Law enforcement officers also searched a vehicle parked at the cabin. The vehicle had a reddish stain on the interior driver's door panel, and crime lab testing indicated that blood on a shirt in the vehicle's trunk was also a DNA match for Marquardt's mother.

¶ 11. Marquardt was charged in Chippewa County with intentional homicide and possession of a firearm by a felon. He pled not guilty and not guilty by reason of mental disease or defect to the charges. Marquardt then moved to suppress evidence obtained as a result of the search of his cabin. He argued that the search warrant, on its face, failed to provide probable cause for the search.

¶ 12. The circuit court denied Marquardt's motion to suppress, but the court of appeals reversed. *See State v. Marquardt,* 2001 WI App 219, ¶¶ 7–8, 20, 53, 247 Wis. 2d 765, 635 N.W.2d 188. The court of appeals determined that the facts in the warrant were insufficient to support a probable cause finding. *Id.,* ¶¶ 14–19. At the same time, however, the court of appeals remanded for the circuit court to address the good faith exception to the exclusionary rule as adopted by this court in *Eason. See Marquardt,* 247 Wis. 2d 765, ¶¶ 20–23, 53.[5]

¶ 13. After the court of appeals issued its decision in the Chippewa County case, Marquardt moved the circuit court in the Eau Claire County case to suppress evidence obtained as a result of the search of his cabin.

[5] This court denied Marquardt's petition for review and the State's petition for cross-review of the court of appeals decision.

In support of his motion, he cited the court of appeals decision. In addition, he argued that the good faith exception did not apply because the police had not undertaken a "significant investigation" as required by *Eason.*

¶ 14. The circuit court denied Marquardt's motion after holding an evidentiary hearing on the good faith issue. The court determined that the State had met the test for good faith under *Eason.*

¶ 15. Marquardt subsequently sought to represent himself. Although the Eau Claire County Circuit Court had determined that Marquardt was competent to stand trial, it concluded that he was not competent to proceed pro se.

¶ 16. After a jury found Marquardt guilty on all charges, the Eau Claire County Circuit Court found Marquardt not guilty by reason of mental disease or defect. The court ordered Marquardt committed to the Department of Health and Family Services for 75 years.

¶ 17. Marquardt renewed his challenge to the search of his cabin in a post-commitment motion. The circuit court denied the motion, and Marquardt appealed.

¶ 18. Meanwhile, on remand in the homicide case in Chippewa County, the circuit court concluded that the search of Marquardt's cabin failed to satisfy the good faith requirement as set forth in *Leon* because the search warrant application was so lacking in indicia of probable cause that no officer could have reasonably believed the warrant contained probable cause to search Marquardt's cabin. Accordingly, the circuit court ordered that evidence obtained as a result of the search

215

be suppressed.[6] After the court denied a motion for reconsideration by the State, the State appealed both the circuit court's suppression order and the court's order denying the State's motion for reconsideration.

¶ 19. Marquardt's appeal in the Eau Claire County case and the State's appeal in the Chippewa County case are now before us on certification pursuant to Wis. Stat. § (Rule) 809.61 (2003–04).

II

¶ 20. There is no dispute that the facts in the March 15, 2000, search warrant for Marquardt's cabin were insufficient to supply probable cause for the search. The central issue we address, which is the same in both cases, is whether the good faith exception to the exclusionary rule applies to the search of Marquardt's cabin. In addressing a good faith issue, we will uphold a circuit court's findings of historical fact unless they are clearly erroneous. *See State v. Richardson,* 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990). However, whether a search ultimately satisfies constitutional standards is a question of law subject to independent appellate review. *See id.* at 137–38.

¶ 21. We must also address Marquardt's assertion that the Eau Claire County Circuit Court erred in finding him not competent to represent himself. We review a circuit court determination of whether a defendant is competent to proceed pro se under what is

---

[6] The court determined that issue preclusion did not prevent it from reaching a conclusion different from the Eau Claire County Circuit Court's conclusion. The State does not challenge this determination on appeal.

216

"essentially a clearly erroneous standard of review." *State v. Garfoot,* 207 Wis. 2d 214, 224, 558 N.W.2d 626 (1997); *see also State v. Byrge,* 2000 WI 101, ¶ 45, 237 Wis. 2d 197, 614 N.W.2d 477.[7]

¶ 22. In addressing the good faith issue, we initially examine the good faith standards recognized in *Leon* and *Eason.* We then analyze the warrant in light of the relevant standards and determine that the good faith exception applies. Finally, we turn to the competency issue and conclude that the Eau Claire County Circuit Court did not err in determining that Marquardt was not competent to proceed pro se.

III

■

¶ 23. Reviewing courts accord great deference to the warrant-issuing judge's probable cause determination, which will stand "unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." *State v. Higginbotham,* 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991). Here, the court of appeals has already determined that the facts in the warrant were insufficient to support the issuing judge's finding of probable cause. *See Marquardt,* 247 Wis. 2d 765, ¶ 19. The court of appeals determination does not, however, end our inquiry in this case in light of the good faith exception to the exclusionary rule as set forth in *Leon* and *Eason.*

---

[7] Both *State v. Byrge,* 2000 WI 101, 237 Wis. 2d 197, 614 N.W.2d 477, and *State v. Garfoot,* 207 Wis. 2d 214, 558 N.W.2d 626 (1997), involved competency to stand trial, not competency to proceed pro se. *Byrge,* 237 Wis. 2d 197, ¶¶ 1, 3–4, 48, 53; *Garfoot,* 207 Wis. 2d at 216–17, 219, 223. The court in *Garfoot,* however, equated the standards of review for these two types of competency determinations. *Garfoot,* 207 Wis. 2d at 224–25.

■

¶ 24. In *Leon,* the Supreme Court recognized an objective good faith exception to the exclusionary rule in the warrant context. Under *Leon,* evidence seized by officers "reasonably relying on a warrant issued by a detached and neutral magistrate" will not necessarily be suppressed. *Leon,* 468 U.S. at 913. "In the ordinary case," the Court in *Leon* explained, "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921.

¶ 25. At the same time, the Court in *Leon* described four sets of circumstances under which the good faith exception does not apply:

> ■ the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. . . . [2] the issuing magistrate wholly abandoned his judicial role . . . . [3] *Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."* [4] Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Id.* at 923 (citations omitted; emphasis added).

■

¶ 26. In *Eason,* this court added two requirements that must be met before the good faith exception may apply. Specifically, the State must show that the process used in obtaining the search warrant included

218

(1) a "significant investigation," and (2) a "review by a police officer trained in, or very knowledgeable of, the legal vagaries of probable cause and reasonable suspicion, or a knowledgeable government attorney." *Eason,* 245 Wis. 2d 206, ¶ 63.

¶ 27. Here, the parties as well as the certified questions of the court of appeals focus on the third *Leon* disqualifying circumstance and the first *Eason* requirement.[8] The State's primary argument is that, based on the warrant application, law enforcement officers could reasonably rely in good faith on the issuing judge's finding of probable cause. Marquardt disagrees, asserting that under *Leon* the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreason-

---

[8] Marquardt has not argued on appeal that the other three *Leon* disqualifying circumstances present a bar to the application of the good faith exception in this case. We take this as a concession that those disqualifying circumstances do not apply here.

We note, however, that with respect to the Chippewa County case, Marquardt requested a hearing under *Franks v. Delaware,* 438 U.S. 154 (1978), on the issue of whether the warrant application contained material misstatements and omissions. *See State v. Marquardt,* 2001 WI App 219, ¶ 7, 247 Wis. 2d 765, 635 N.W.2d 188. This issue corresponds to the first *Leon* disqualifying circumstance. *See United States v. Leon,* 468 U.S. 897, 923 (1984) (citing *Franks*). The court of appeals did not reach the *Franks* issue, *see Marquardt,* 247 Wis. 2d 765, ¶ 24, and it appears that Marquardt has abandoned his argument on the applicability of the first *Leon* circumstance. Although he made minimal reference to *Franks* and the first *Leon* circumstance in one of his briefs and at oral argument, he has not expressly argued that this court should decide whether the first *Leon* circumstance applies and he has not requested that this court remand for a *Franks* hearing.

219

able.[9] In addition, the parties dispute whether, under the facts of this case, the State has satisfied the *Eason* requirement of a "significant investigation."

¶ 28. We address first whether the affidavit supporting the warrant contained sufficient "indicia" of probable cause within the meaning of *Leon*. In doing so, we begin by observing that the inquiry into whether a warrant affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon,* 468 U.S. at 923, must be different from the inquiry into whether the facts in the warrant application are "clearly insufficient to support a determination of probable cause." *Higginbotham,* 162 Wis. 2d at 989.

¶ 29. Were it otherwise, the third *Leon* disqualifying circumstance, which limits the applicability of the good faith exception, would be superfluous. The limitation would operate as nothing more than the usual yardstick by which reviewing courts measure a warrant-issuing judge's probable cause determination. "If a lack of a substantial basis [for probable cause] also prevented application of the *Leon* objective good faith exception, the exception would be devoid of substance." *United States v. Bynum,* 293 F.3d 192, 195 (4th Cir. 2002).

¶ 30. Consequently, the court of appeals' conclusion that the warrant application was insufficient to support the warrant-issuing judge's probable cause determination does not mean that the affidavit in support

---

[9] Although Marquardt is not represented by the same appellate counsel in both cases, we have generally combined the arguments of counsel unless otherwise indicated because the cases implicate the same central issue.

of the warrant was lacking in indicia of probable cause within the meaning of *Leon.* Our task here is not the same as it would be if we were reviewing the warrant-issuing judge's probable cause determination.

¶ 31. At the same time, the *Leon* "indicia" requirement carries substantive force. The requirement is grounded in Justice Byron White's concurrence in *Illinois v. Gates,* 462 U.S. 213, 264 (1983), in which Justice White explained that "the good-faith exception would not apply if the material presented to the magistrate or judge is . . . so clearly lacking in probable cause that no well-trained officer could reasonably have thought that a warrant should issue." *See Leon,* 468 U.S. at 923.

¶ 32. This court has previously recognized that, under *Leon,* "even where an officer has obtained a warrant and abided by its terms, exclusion may nonetheless be appropriate." *Eason,* 245 Wis. 2d 206, ¶ 36 (citing *Leon,* 468 U.S. at 922). Although officers cannot be expected to question a warrant-issuing judge's probable cause determination "[i]n the ordinary case," *Leon,* 468 U.S. at 921, the officers may not unreasonably rely on it.

¶ 33. Under *Leon*'s rationale, sufficient "indicia" of probable cause refers to more than the fact that one or more judges have approved and signed the warrant. "[I]t is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon,* 468 U.S. at 922–23 (footnote omitted). The exclusionary rule will apply when "a reasonably well trained officer would have known that the search warrant was illegal despite the magistrate's authorization." *Id.* at 922 n.23.

221

¶ 34. In short, the very point of the third *Leon* circumstance is that the good faith exception will not apply when the warrant is based on an affidavit so lacking in indicia of probable cause that a law enforcement officer—who ordinarily should not be expected to second-guess the warrant-issuing judge—can be said to have unreasonably relied on the warrant.

¶ 35. Here, the warrant application included an affidavit with the following information:

> Investigator Price [of the Chippewa County Sheriff's office] reports that after finding the body of Mary J. Marquardt, he spoke with her husband, Alfred E. Marquardt. Mr. Marquardt informed him that he and Mary have a son, Bill Marquardt, who, since the location of Ms. Marquardt's body had not been seen or heard from. Alfred Marquardt further informed Investigator Price that Bill Marquardt owned with Alfred Marquardt a cabin in which Bill resided at E27505 County Highway M, Town of Fairchild, County of Eau Claire, Wisconsin.
>
> Investigator Price further reports that in examining the body of Mary J. Marquardt and the scene where she was found, it appeared as though among the wounds incurred by her was a knife wound. Also at the scene, officers were able to locate a number of footprints that may be suitable for comparison with the shoes that made them.
>
> Investigator Barnier reports that in checking Eau Claire County tax rolls, he learned that a cabin . . . located at E27505 Highway M, Town of Fairchild, Eau Claire County, [is] owned by Alfred and Bill Marquardt.

¶ 36. The warrant application also incorporated and attached the affidavit supporting the search warrant that the Chippewa County Circuit Court had

issued two days earlier for the search of the home of Marquardt's parents. That affidavit included this information:

> Inv. Price reports that on March 13, 2000, Chippewa County Sheriff's Dispatch received a 911 call from 11766 State Hwy 178, Chippewa Falls, Township of Eagle Point. The caller identified himself as Alfred E. Marquardt, DOB 07/30/1946. Marquardt reported that his wife was apparently dead at the residence.

> Price continued that he responded to the Marquardt home and met with [Alfred] Marquardt. [Alfred] Marquardt relayed that he had left home at about 7 AM that morning and tried to call home about 11:50. The phone was busy and remained so the remainder of the day. [Alfred] Marquardt stated that he left work early and returned home because of the busy phone and upon arrival, found his wife, Mary J. Marquardt covered with a blanket in the garage. She was cold and unresponsive and appeared to have a head wound.

> Price reports that a shell casing, tentatively identified as 9 mm, was observed on the premises.

■■■■■■

¶ 37. A search warrant may issue upon a determination of probable cause. Before issuing a search warrant a magistrate must be "apprised of 'sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched.' " *Higginbotham,* 162 Wis. 2d at 989 (quoting *State v. DeSmidt,* 155 Wis. 2d 119, 131–32, 454 N.W.2d 780 (1990)). As discussed above, an "indicia" of probable cause is not the same as a probable cause determination. Rather, the standard for "indicia" is less demanding. It requires sufficient signs of probable cause, not probable cause per se.

¶ 38. Here, the objects sought in the search warrant included firearms, knives, shoes, and any clothing containing hair, blood, or fibers linking the victim to such clothing. A number of facts in the warrant application, along with reasonable inferences that law enforcement officers could draw from those facts, satisfy us that there is sufficient indicia of probable cause that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched.

¶ 39. First, regarding objects sought in the warrant, the warrant application states that there was a nine-millimeter shell casing found at the scene of the homicide, and that it appeared as though one of the wounds suffered by the victim was a knife wound. Additionally, the application includes information that a number of footprints found at the scene were thought to be suitable for comparison with the shoes that made them.

¶ 40. Second, the warrant application indicates that Marquardt's father provided police the location of Marquardt's cabin and reported that Marquardt had not been seen or heard from since the time of his mother's death two days earlier. From these facts, an officer could draw a reasonable inference that Marquardt's absence was suspicious and that Marquardt's father thought that Marquardt might be involved in his mother's death.

¶ 41. Third, the application indicates that Marquardt's mother was found covered in a blanket. Officers could reasonably infer from this fact, as has another court under similar circumstances, that the perpetrator was familiar with the victim and felt remorse or guilt. *See Thiel v. Schuetzle,* 200 F.3d 1120,

1122 (8th Cir. 1999) (victim's body "was found covered with a blanket, which was circumstantial evidence that the murderer was a family member or friend"). This may not be the only inference, but it is an inference that a reasonable officer could make.

¶ 42. Fourth, the warrant application makes no mention of evidence of a forced entry, sexual trauma, or missing valuables. The absence of such facts in the application supports a reasonable inference that the motive of the killer was not burglary or sexual assault, tending to further suggest that Marquardt's mother knew her killer.

¶ 43. Fifth, the application included information that the phone was busy starting at 11:50 a.m. and remained busy for the rest of the day. A reasonable inference from this information is that the phone was off the hook, likely in relation to the homicide, and that the perpetrator had therefore been inside the residence. Again, this raises an inference that the perpetrator was someone who Marquardt's mother knew.

■

¶ 44. In determining whether an affidavit contains sufficient indicia of probable cause, any competing reasonable inferences are resolved in favor of the State. *See State v. Schaab*, 2000 WI App 204, ¶ 13, 238 Wis. 2d 598, 617 N.W.2d 872; *see also State v. Dunn*, 121 Wis. 2d 389, 397–98, 359 N.W.2d 151 (1984). Based on all the facts in the warrant application, and the reasonable inferences from those facts, we determine that the warrant was based on an affidavit containing sufficient indicia of probable cause for purposes of *Leon*.

¶ 45. Having determined that *Leon*'s third disqualifying circumstance is not a bar to the application of the good faith exception to the search of Marquardt's

cabin, we turn to the *Eason* requirements. In *Eason*, this court concluded that Article I, Section 11 of the Wisconsin Constitution requires additional protection beyond that afforded by the good faith exception as recognized by the U.S. Supreme Court in *Leon*.[10] *Eason*, 245 Wis. 2d 206, ¶ 3.

¶ 46. Testimony at the good faith hearing in the Eau Claire County case established that an experienced district attorney had met with officers and had drafted the warrant application. Thus, there can be no real dispute that the State satisfied the second *Eason* requirement because the process used in obtaining the search warrant included "review by . . . a knowledgeable government attorney." *Id.,* ¶ 63.

¶ 47. The parties do, however, dispute whether the State satisfied the first *Eason* requirement that there be a significant investigation. In determining that there was a significant investigation here, we rely primarily on facts from two sources: a report by one of the officers who responded to the murder scene, Investigator Price of the Chippewa County Sheriff's office, and the good faith hearing in the Eau Claire County case.

¶ 48. Within approximately one hour after discovery of the body of Marquardt's mother on March 13, 2000, Investigator Price interviewed Marquardt's father for approximately four hours. Price learned that

---

[10] Article I, Section 11 of the Wisconsin Constitution reads as follows:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

Marquardt had a problem with law enforcement in the past and had gone to jail. In addition, Price discovered that when Marquardt last visited his parents' house, he dug up $12,000 in cash that he had previously buried. Marquardt was very upset at the time and told his parents that someone was after him and that he had to get out of the country. Price also learned that when Marquardt's parents had last visited Marquardt at the cabin, Marquardt was agitated and appeared not to want his parents at the cabin.

¶ 49. In addition, Price discovered that a phone message for Marquardt, which Marquardt's mother had put on the refrigerator, had been removed. Price also learned that Marquardt was the only one other than his parents who had keys to their residence and that the service doors to the residence were normally locked when Marquardt's mother was home alone.

¶ 50. The same evening that Investigator Price interviewed Marquardt's father, officers obtained and executed the search warrant for the residence of Marquardt's parents. Agents from the State Department of Justice Division of Criminal Investigation arrived on the scene to assist in pursuing the investigation. Agents then drove to Marquardt's cabin and attempted to contact him during the early morning hours of March 14. The agents interviewed one of Marquardt's neighbors that morning, and discovered that there had been a break-in at the neighbor's home and that the neighbor's dog had been shot. Agents also learned from the neighbor that the officers investigating the break-in had found five nine-millimeter shell casings, which were the same caliber as the casing found at the homicide scene. The agents returned to the homicide scene later that day and continued investigating.

¶ 51. Also on March 14, an initial autopsy was performed on the body. The autopsy revealed that there was no indication of sexual assault and suggested that the victim's death resulted from a gunshot wound to the head and a stab wound to the throat.[11]

¶ 52. Investigator Price estimated that over the course of March 13 and 14, a total of 20 law enforcement officers had become involved in the investigation of the homicide. The circuit court aptly observed as follows in concluding that the State had met the *Eason* "significant investigation" requirement:

> You have the Chippewa County Sheriff, Eau Claire County Sheriff. You had the State investigators and I think Sergeant Vogler even thought maybe the City of Chippewa Police Department [was] involved. So you in any event had different officers from different jurisdictions all working what I would consider to be nearly around the clock efforts.

¶ 53. Like the circuit court, we are satisfied that the facts demonstrate the State has shown that police were engaged in a significant investigation within the meaning of *Eason*. Our read of *Eason* is that a "significant investigation" does not require a showing that the investigation yielded the probable cause that would have been necessary to support the search at issue. Thus, contrary to what some of Marquardt's arguments seem to suggest, we need not determine whether, by the time officers searched Marquardt's cabin pursuant to

[11] In addition, it appears that officers may have begun an attempt to obtain Marquardt's cell phone records before executing the search warrant for Marquardt's cabin. Investigator Price testified that the report of a sheriff's deputy indicated that the deputy had obtained the records on March 16.

the March 15 warrant, their investigation had provided them with probable cause for the search.[12]

¶ 54. At the same time, we recognize, as does the State, that a significant investigation for purposes of *Eason* refers to more than the number of officers or hours devoted to an investigation. In other words, as the State essentially acknowledges, the nature and focus of the investigation are important.

¶ 55. To summarize our good faith analysis, we determine that the warrant was based on an affidavit that contained sufficient indicia of probable cause to satisfy *Leon*, and Marquardt does not argue that the good faith exception is otherwise barred by *Leon*. We also conclude that the State has shown compliance with the requirements of *Eason*. Accordingly, the good faith

---

[12] Marquardt objects to the use of the transcript of the Eau Claire County good faith evidentiary hearing in the Chippewa County case because the facts adduced at the hearing were not separately tested in the Chippewa County proceedings and because he believes that these facts were not properly addressed or handled by counsel in the Eau Claire County hearing. However, it would appear from Marquardt's arguments that the essence of his dispute with the facts adduced at the hearing goes to the question of what the officers knew that would have incriminated Marquardt by the time of the search, not to the question of the officers' investigative efforts by the time of the search. Thus, Marquardt's objection misperceives the nature of our "significant investigation" inquiry under *State v. Eason,* 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625. As we have said, the State does not need to demonstrate that law enforcement officers possessed facts constituting probable cause for the search at the time of the search in order to meet the significant investigation requirement.

exception to the exclusionary rule applies to the search of Marquardt's cabin.[13]

## IV

¶ 56. We turn to address Marquardt's assertion that the circuit court erred in finding him not competent to represent himself in the Eau Claire County case. Defendants have a constitutional right to self representation. *See State v. Klessig,* 211 Wis. 2d 194, 217–18, 564 N.W.2d 716 (1997). When a defendant seeks to proceed pro se, the circuit court undertakes a two-part inquiry, ensuring that the defendant (1) has knowingly, intelligently, and voluntarily waived the right to counsel, and (2) is competent to proceed pro se. *Id.* at 203.

¶ 57. Marquardt's focus is on the second part of the inquiry. He asserts that the circuit court erred by applying a higher standard of competence for self representation than for competence to stand trial. He argues that, under *Godinez v. Moran,* 509 U.S. 389

---

[13] Having determined that the good faith exception applies in this case for the reasons we have explained, we need not consider Marquardt's argument that, in the Eau Claire County case, his trial counsel was ineffective for failing to argue that the search warrant for his cabin lacked sufficient indicia of probable cause under *Leon.* In light of our determination that the warrant was based on an affidavit containing indicia of probable cause sufficient to satisfy *Leon,* counsel's failure to make such an argument cannot be deemed prejudicial to Marquardt. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984) (In order to demonstrate ineffective assistance of counsel, the defendant must prove both that trial counsel's performance was deficient and that the deficient performance prejudiced the defense.).

(1993), the standard of competence for self representation can be no higher than the standard of competence to stand trial.

¶ 58. This court has previously analyzed and rejected this very argument in *Klessig*. *See Klessig*, 211 Wis. 2d at 208–12.

> In Wisconsin, there is a higher standard for determining whether a defendant is competent to represent oneself than for determining whether a defendant is competent to stand trial. This higher standard is not based on the requirements of the Sixth Amendment, but stems from the independent adoption of the higher standard by [individual states] as allowed under *Godinez*.

*Id.* at 212 (footnote omitted).[14]

¶ 59. Marquardt also asserts that the circuit court erred because the court improperly focused on his lack of legal or technical ability. Further, Marquardt argues, the court failed to make a finding that he had a specific problem or disability that prevented him from representing himself.

¶ 60. This court in *Pickens v. State*, 96 Wis. 2d 549, 292 N.W.2d 601 (1980),[15] set forth standards by

---

[14] Marquardt does not provide any compelling reason why we should overrule the portions of *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997), that preclude his argument under *Godinez v. Moran*, 509 U.S. 389 (1993).

[15] The court in *Klessig* overruled one portion of *Pickens v. State*, 96 Wis. 2d 549, 292 N.W.2d 601 (1980), but specifically "affirm[ed] the holding in *Pickens* as still controlling on the issue of competency." *Klessig*, 211 Wis. 2d at 206, 212. Subsequent to *Klessig*, the competency standards in *Pickens* continue to be cited as controlling authority. *See State v. Ruszkiewicz*, 2000 WI App 125, ¶ 34, 237 Wis. 2d 441, 613 N.W.2d 893 ("In *Klessig*, [the] court confirmed the standard [for competency to

which the circuit court should measure a defendant's competence to proceed pro se:

> [A]lthough technical legal knowledge is not relevant, literacy and a basic understanding over and above the competence to stand trial may be required. Surely a defendant who . . . is simply incapable of effective communication or, because of less than average intellectual powers, is unable to attain the minimal understanding necessary to present a defense, is not to be allowed "to go to jail under his own banner. . . ."
>
> Factors to consider . . . include the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury. However, since *Faretta* [*v. California,* 422 U.S. 806 (1975),] indicates that persons of average ability and intelligence are entitled to represent themselves, a timely and proper request [to proceed pro se] should be denied only where a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist.

*Id.* at 568–69 (citations omitted); *see also Klessig,* 211 Wis. 2d at 212.

¶ 61. Thus, the circuit court may consider the factors enumerated in *Pickens,* in addition to other factors. At the same time, the record must demonstrate an identifiable problem or disability that may prevent a defendant from making a meaningful defense.

¶ 62. Although the record here shows that the circuit court was concerned about Marquardt's lack of legal skill, Marquardt's lack of legal skill was not the

conduct self representation] set out in *Pickens* . . . ."); *see also State v. Thornton,* 2002 WI App 294, ¶ 21 n.7, 259 Wis. 2d 157, 656 N.W.2d 45.

sole basis for the circuit court's determination. At the hearing on Marquardt's competency to proceed pro se, the court asked Marquardt about his education and experience, and Marquardt testified that he had a high school education and that he had never been to a trial before.

¶ 63. The circuit court voiced concern about "the absolute seriousness of the charges[,] . . . the complexity of the case[,]" and evidence of Marquardt's mental illness. In addition, the court observed that it was "particularly concerned over Mr. Marquardt's kind of microscopic review of all of these things, whether he's detached enough to make any sense out of the charges and to put the state to its burden of proof."

¶ 64. Finally, the court relied on medical and psychological opinions as to Marquardt's competence, which identified specific psychological problems or diagnoses. In at least one instance, an opinion concluded that Marquardt's psychological problems interfered with his ability to plan a defense strategy.[16]

¶ 65. The State in its brief refers to compelling evidence in the record of Marquardt's mental illness. For example, one psychiatrist opined that Marquardt

---

[16] We recognize that the opinions were originally given in the context of whether Marquardt was competent to stand trial, not in the context of whether Marquardt was competent to represent himself. However, given that there is a difference between the two competency standards under *Klessig,* a circuit court does not necessarily err by making both a determination of competence to stand trial and a determination of incompetence to proceed pro se based on the same evidence. Here, the Eau Claire County Circuit Court recognized that even the question of whether Marquardt was competent to stand trial was a "very close call."

suffers from a mental illness that interfered with his ability to appreciate the charges against him. She explained as follows:

> I believe that Mr. Marquardt suffers from a delusional symptom which leaves him living in a world where he believes everything that's going on around him is part of a plot to frame him and as such he cannot appreciate that these are serious charges, that these things have occurred, that there is evidence which indicates he has committed these crimes. He simply can't get beyond his belief that the legal system is framing him.

The psychiatrist concluded that Marquardt was "so delusional that he cannot appreciate the evidence" and that "[h]e cannot plan a defense strategy that is realistic . . . ."

¶ 66. Similarly, a psychologist opined that Marquardt suffers from a delusional disorder of paranoid schizophrenia and that the nature of the delusional system was a "command hallucination." According to the psychologist, Marquardt professed to be "the [prophet] foretold by Nostradamus, to provide the gift that will save the world." Further, Marquardt's mental illness caused him to view anyone who challenged his beliefs as "the enemy."

¶ 67. The circuit court concluded as follows, in reference to the medical and psychological opinions that were before the court:

> That would be at least part of the ruling because of the fact that that has been—his mental status has been put into question by a number of people, but I was more focusing on the recent, and that is watching him here in court and understanding what I consider to be a very complex case. It isn't just some simple shoplifting, but yes, I would also add that—and incorporate the reports that have been received.

¶ 68. Contrary to what Marquardt argues, we conclude that the record supports the circuit court's determination that Marquardt was not competent to represent himself. We do not share Marquardt's view that the circuit court must always make an express finding as to which specific problem or disability prevented a defendant from being able to meaningfully represent himself.

¶ 69. Our review of the record satisfies us that the medical and psychological opinions in this case identified a number of specific problems that could have prevented Marquardt from meaningfully presenting his own defense and that the circuit court took these problems into account. Accordingly, we determine that the court did not err in its decision on Marquardt's competency to represent himself.

## V

¶ 70. In sum, we conclude that the good faith exception to the exclusionary rule applies to the March 15, 2000, search of Marquardt's cabin. The affidavit in support of the warrant contains indicia of probable cause sufficient to meet the *Leon* test and the facts here demonstrate a significant investigation pursuant to *Eason*. Additionally, we conclude that the circuit court did not err in its decision on Marquardt's competency to represent himself in the Eau Claire County case.

¶ 71. Consequently, we affirm the Eau Claire County Circuit Court order denying Marquardt's motion for post-commitment relief, and we reverse the Chippewa County Circuit Court order suppressing evidence and order denying the State's motion to recon-

235

sider the court's suppression order. We remand to the circuit court in each case for further proceedings consistent with this opinion.[17]

*By the Court.*—The order of the Eau Claire County Circuit Court is affirmed and the cause is remanded to the circuit court for further proceedings consistent with this opinion; the orders of the Chippewa County Circuit Court are reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 72. SHIRLEY S. ABRAHAMSON, C.J. (*concurring in part and dissenting in part*). This case is best understood as illustrating the aphorism that "hard

---

[17] In the Eau Claire County case, Marquardt raised additional issues in the court of appeals: whether certain testimony violated his right to remain silent; whether the exclusion of other testimony violated his right to present a defense; whether evidence was admitted in violation of Wis. Stat. § 904.04(1) (2003–04), pertaining to character evidence; and whether he was denied effective assistance of counsel based on a comment counsel made during opening statements.

Marquardt did not, however, address these issues in the new brief-in-chief he submitted after we accepted certification. The State, in its response brief, suggests that Marquardt has therefore abandoned these issues, and Marquardt does not offer any reply to the State on this point.

Our certification order alerted the parties that when we accept review upon certification, we acquire jurisdiction of the "entire appeal, which includes all issues, not merely issues certified or the issue for which the court accepts the certification." Moreover, our certification order indicated that if the parties file new briefs, as Marquardt did here, they must restate any material upon which they wish to rely.

Given all the circumstances, we deem the additional issues abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.,* 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

cases make bad law." This is a hard case because suppression of the evidence may jeopardize prosecution of Marquardt, who is charged with first degree intentional homicide.

¶ 73. I would not apply the good faith exception. I would remand the cause to the circuit court for an evidentiary hearing to determine whether the seized items are admissible under the inevitable discovery doctrine.[1]

¶ 74. The Fourth Amendment protects each of us against unreasonable searches and seizures. The Constitution requires that a warrant be based on a finding of probable cause.[2]

¶ 75. The State, Marquardt, and this court agree that in the present case the search warrant was not based on probable cause and that the evidence seized must be suppressed unless an exception to probable cause applies.

¶ 76. The U.S. Supreme Court has adopted a good faith exception to the probable cause requirement. The evidence need not be suppressed if a well-trained officer reasonably and in good faith relies on the search warrant. The good faith exception does not apply,

---

[1] Because it found that the good faith exception applied, the Eau Claire County Circuit Court did not reach the inevitable discovery issue. The Chippewa County Circuit Court considered inevitable discovery, but only on a motion for reconsideration of its suppression order and without an evidentiary hearing.

[2] The Fourth Amendment of the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

however, when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' "[3] In other words, the officer is not acting in good faith when the affidavit lacks "indicia of probable cause." A law enforcement officer's reliance on the sufficiency of the facts stated must be objectively reasonable. Bare bones affidavits are not good enough.[4]

¶ 77. Thus, the focus in the present case is not the magistrate's determination of probable cause but rather whether there are "indicia of probable cause" to support a law enforcement officer's good faith belief that the warrant is valid.[5]

¶ 78. What facts bring a case within this "indicia of probable cause" rule is a difficult issue that is frequently litigated.[6] "Indicia of probable cause" must have substantive force. Unless the "indicia of probable cause" standard is a check on searches by law enforcement officials, the Fourth Amendment warrant and reasonableness requirements are for naught. When a court takes an "anything goes" approach when looking for "indicia of probable cause," it has effectively excised the probable cause requirement from the Fourth Amendment.

¶ 79. I turn to the affidavits underlying the search warrant in the present case, searching for "indicia of probable cause."

---

[3] *United States v. Leon,* 468 U.S. 897, 923 (1984) (quoting *Brown v. Illinois,* 422 U.S. 590, 610–611 (1975) (Powell, J., concurring in part)).

[4] *Leon,* 468 U.S. at 923 n.24.

[5] Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.3(f) at 96 (4th ed. 2004).

[6] LaFave, *supra* note 5, at 92.

¶ 80. The affidavit for the search warrant in the present case must contain "indicia of probable cause" that the described items used in the commission of the described crime are on the described premises.[7]

¶ 81. It is uncontested that the affidavits in the present case do not directly tie the items used in the commission of the murder to Marquardt's cabin. That is, the affidavits contain no evidence directly linking Marquardt's cabin to the crime or instrumentalities or evidence of the crime. Therefore, any nexus between the crime and the cabin must rest on a nexus between the crime and the person who occupies the cabin, in the instant case, Marquardt. If a nexus between the crime and Marquardt is established, then it is still necessary to tie the objects described in the search warrant to the cabin. "[P]robable cause to believe that a person has committed a crime does not *automatically* give the police probable cause to search his house for evidence of that crime."[8] We have held, however, that where police have probable cause to believe an individual committed a crime, police could assert probable cause for a warrant to search locations connected to that individual (e.g., his home or car) if there was a nexus between the crime and the premises.[9]

---

[7] *See State v. Starke,* 81 Wis. 2d 399, 408, 260 N.W.2d 739 (1978).

[8] *State v. Higginbotham,* 162 Wis. 2d 978, 995, 471 N.W.2d 24 (1991) (quoting *United States v. Freeman,* 685 F.2d 942, 949 (5th Cir. 1982) (emphasis added)).

[9] *State v. Multaler,* 2002 WI 35, ¶¶ 31, 33, 252 Wis. 2d 54, 643 N.W.2d 437 (holding that probable cause existed to search Multaler's home for evidence of murders because he was an alleged serial killer, and a unique characteristic of serial killers is to keep mementoes of their murders indefinitely); *State v. Ward,* 2000 WI 3, ¶¶ 27, 29–34, 231 Wis. 2d 723, 604 N.W.2d

¶ 82. The affidavits in the present case do not provide "indicia of probable cause" that Marquardt murdered his mother.

¶ 83. The most that can be drawn from the affidavits is that Marquardt's father informed a law enforcement officer that Marquardt had not been seen or heard from since the body was discovered. Assuming the father spoke to Investigator Price and Investigator Price communicated this information to Investigator Vogler immediately before Investigator Vogler executed the March 15 affidavit, the maximum time the father did not see Marquardt is two days.

¶ 84. A two-day absence of an adult son is not an "indicia of probable cause" to believe that the person murdered his mother.

¶ 85. The majority further concludes that because a blanket covered the body, an objectively reasonable law enforcement officer could have inferred that the victim had an emotional attachment to the perpetrator and that the perpetrator was Marquardt. The majority cites no study, no peer-reviewed article, no text, not even a TV crime show or an article in a popular

517 (holding that probable cause existed to search Ward's home based on fact that because he was an alleged large-scale drug dealer, it was reasonable to infer that he kept the drugs in his home, which was his likely place of business); *Higginbotham,* 162 Wis. 2d at 995–96 (in arson case, probable cause for warrant to search defendant's residence based on earlier sighting of turpentine at defendant's home); *State v. Tompkins,* 144 Wis. 2d 116, 123–24, 423 N.W.2d 823 (1988) (finding probable cause for warrant to search Tompkins' automobile, even though it was just as likely drugs could have been found at two alternate locations); *State v. Schaefer,* 2003 WI App 164, ¶¶ 17–19, 266 Wis. 2d 719, 668 N.W.2d 760 (probable cause for warrant to search Schaefer's home for child pornography based on probable cause that he was a pedophile and child molester).

magazine to show that such a theory is either legitimate or has gained common knowledge or use. The majority's reasoning is based on no more than its own assertion and on an Eighth Circuit case[10] in which the court cited to the trial record that apparently had evidence supporting this inference. No such evidence exists here. Furthermore, in that case there was additional strong evidence supporting probable cause.

¶ 86. Finally, although statistics show that most murderers are men and that men tend to use knives and guns in murders, these facts are not sufficient to supply "indicia of probable cause" pointing to Marquardt as the murderer. Nor are the facts that no break-in or theft occurred and the phone was busy "indicia of probable cause" pointing to Marquardt.

¶ 87. The facts in the affidavits taken together support a finding of probable cause to believe that (1) a crime was committed; (2) a knife and gun were used in committing this crime; and (3) if the evidence sought in the search warrant were discovered, it would tend to indicate that a particular person had committed the crime.

¶ 88. Giving the State the benefit of all reasonable inferences and rejecting an overly technical or formalistic approach to the affidavits or probable cause or "indicia of probable cause," I must disagree with the majority opinion's conclusion that the search warrant contained sufficient "indicia of probable cause" that Marquardt committed the murder and that the objects were located in his cabin to allow a reasonable, well-trained officer to objectively and in good faith rely on the warrant.

---

[10] See *Thiel v. Schuetzle,* 200 F.3d 1120, 1122 (8th Cir. 1999).

¶ 89. The most that can be said is that law enforcement officers may have had a hunch that Marquardt may be connected to the murder and believed it might be fruitful to search his cabin. My understanding is that the first suspects in a murder are generally members of the family. Such a hunch is not good enough to overcome the Fourth Amendment's protection against government intrusion into the home.

¶ 90. The court of appeals, in holding that the warrant application failed to show probable cause, described well the total lack of "indicia of probable cause" in the warrant affidavits:

> Although these facts [in the affidavits] may lead a reasonable police officer to pursue further investigation of Marquardt, we conclude that there is *nothing in the facts to tie Marquardt to the crime, much less to tie his home to the crime.* Although the warrant-issuing judge may have been provided sufficient facts to excite an honest belief in a reasonable mind that the particular types of objects sought—including shoes, knives, and guns—could be linked with the commission of the crime, there was *no fact that suggested those items would be found in Marquardt's cabin.*[11]

¶ 91. The Chippewa County Circuit Court had it right when it stated that if bare bones affidavits like the one in the present case satisfy the good faith exception, there is little deterrence to unlawful searches, which the exclusionary rule seeks to prevent. The circuit court correctly declared that under the good faith exception as conceived by the State (and now adopted by the majority opinion), it would take little creativity and minimal evidence to make any person the target of an

---

[11] *State v. Marquardt,* 2001 WI App 219, ¶ 19, 247 Wis. 2d 765, 635 N.W.2d 188 (emphasis added).

investigation and obtain a search warrant for the person's residence. Based on these criteria, a common sense reading of the affidavits in the present case cannot lead to a finding of "indicia of probable cause."

¶ 92. For the reasons set forth, I would remand the cause for an evidentiary hearing to determine the admissibility of the items seized under the inevitable discovery doctrine.

¶ 93. I am authorized to state that Justice LOUIS B. BUTLER, JR. joins this opinion.