William D. WITT, III, Plaintiff-Appellee, Cross-Appellant,

v.

NORFE, INC., Defendant-Appellant, Cross-Appellee.

No. 82–5461.

United States Court of Appeals, Eleventh Circuit.

Jan. 17, 1984.

William M. Howell, Jacksonville, Fla., for Norfe, Inc.

David R. Lewis, Jacksonville, Fla., for Witt.

Before RONEY and CLARK, Circuit Judges, and GIBSON *, Senior Circuit Judge.

PER CURIAM:

This products liability action was brought against Norfe, Inc., for injuries sustained by William D. Witt, III when he accidentally struck a shower door manufactured by Norfe's predecessor. A jury awarded Witt $46,000 plus costs. We reverse for a new trial.

In November 1978, plaintiff, while showering, accidentally struck the shower door with his right arm. The glass door shattered, injuring plaintiff. Plaintiff brought suit against Norfe on theories of breach of implied warranty, negligence, and strict liability, arguing principally that the manufacturer made the shower door with glass that was too easily breakable. Defendant denied all allegations of liability on its part and asserted as an affirmative defense that plaintiff misused the product and was therefore contributorily negligent.

Upon receipt of all the evidence, the judge instructed the jury on the special verdict form to be used,[1] and submitted questions on each of Witt's three claims for recovery, after defining the terms of each claim. The verdict was returned as follows: (1) The jury found for the defendant on the breach of warranty claim, answering "no"

---

* Honorable Floyd R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. See generally, *Guidry v. Kem Manufacturing Co.,* 598 F.2d 402 (5th Cir.1979).

to the question: "Was the shower door defective in that it was not reasonably fit for the intended use or a reasonably foreseeable use at the time it left the possession of Norfe?"; (2) The jury likewise decided in Norfe's favor on the strict liability claim, finding that the door was not defective in that it was not unreasonably dangerous to the user at the time it left Norfe's possession; (3) The jury found for the plaintiff on a negligence theory, concluding that although Witt was 20% negligent, Norfe was 80% so, and that Norfe's negligence was a legal cause of the plaintiff's injury. Accordingly, Norfe was held liable for $46,000, 80% of the $57,500 in damages sustained by the plaintiff.

The appellant urges us to reverse the judgment on the verdict below, on the grounds that the jury's findings were inconsistent. It is Norfe's position that the jury's third finding, that the defendant negligently designed the shower door causing plaintiff's injury, is irreconcilable with its first and second findings that the shower door was not defective.

"A finding by this court that a critical verdict was inconsistent with another would require a remand for a new trial (citation omitted) since we could not speculate which inconsistent finding the jury intended to be controlling." *Miller v. Royal Netherlands Steamship Co.,* 508 F.2d 1103 (5th Cir.1975). In order to qualify as inconsistent, however, there must be "no rational, non-speculative way to reconcile ... two essential jury findings." *Higginbotham v. Ford Motor Co.,* 540 F.2d 762, 773 (5th Cir.1976). "Answers should be considered inconsistent ... only if there is no way to reconcile them.... Even a jury verdict inconsistent on its face is not inconsistent if it can be explained by assuming the jury reasonably misunderstood the instructions." *Willard v. Hayward,* 577 F.2d 1009, 1011 (5th Cir. 1978). Turning to the jury's findings in this case, we conclude that they are inconsistent as that term has been defined in the case law of this Circuit.

In Florida, as elsewhere, negligence is defined as "the failure to observe, for the protection of another's interest, such care and precaution as the circumstances demand, or the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances." *Seaboard Coastline R. Co. v. Griffis,* 381 So.2d 1063, 1065 (Fla.App.1979). Applying this definition to the concept of negligence in product design, "a manufacturer is held to a standard of reasonable care in the design of its products, so that they will be reasonably safe for use in a foreseeable manner." P. Sherman, *Products Liability* 21 (1981); *See also, Matthews v. Lawnlite Co.,* 88 So.2d 299 (Fla.1956).

> In a products liability case grounded in negligence, as in all other cases, it is necessary to establish the elements of actual negligence, namely, a breach of duty on the part of the seller toward the person complaining of the defect, and an injury to the person to whom that duty is owed. The burden of proving negligence is on the plaintiff, and he must also establish, as in any products liability case, that the product in question was defective, that the defendant manufacturer's or seller's act or omission with respect to the product was causally related to the harm, and that the defendant was actually connected with the product as the manufacturer or seller.

R. Hursh, H. Bailey, *American Law of Products Liability* 2d § 2:3 (1974).

By comparison, strict liability, adopted by the Supreme Court of Florida in *West v. Caterpillar Tractor Co.,* 336 So.2d 80 (Fla. 1976), is defined in the following terms:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if:
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

336 So.2d at 84; Restatement of Torts (2d) § 402A(1).

At first blush, it would not seem necessarily inconsistent for a jury to find a defendant negligent, yet not strictly liable in tort. The manufacturer might well have been less than reasonably careful, *i.e.*, negligent, in designing the shower door, but for which plaintiff's injuries would not have occurred; that would not necessarily mean that the resulting design defect rose to the level of being "unreasonably dangerous."[2] In Florida, however, a recent court of appeals decision indicates that the design defect need not be "unreasonably dangerous" in order to satisfy the requirements of a strict liability claim, notwithstanding the language of *West* and § 402A:

> On first impression, the Restatement may seem to require proof that the product be both defective and unreasonably dangerous. That, however, is not the case. Section 402A defines defective condition by requiring the product to be "at the time it leaves the seller's hands in a condition not contemplated by the ultimate consumer, which would be unreasonably dangerous to him." See comment g. The words unreasonably dangerous are in turn defined as requiring the product to be "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." See comment i. It appears that the terms defective and unreasonably dangerous are redundant. . . . Notwithstanding the controversy by both academe and the courts over the proper test for determining a product's defective condition, the standard for all product defects under § 402A is the same: Were the ordinary consumer's expectations frustrated by the product's failure to perform under the circumstances in which it failed?

*Cassisi v. Maytag Co.*, 396 So.2d 1140, 1143–45 (Fla.App.1981).

■ In light of the suggestion in *Cassisi* that the provision in § 402A that a defective product be dangerously so is merely excess baggage, any distinction drawn between strict liability and negligence on the grounds that § 402A requires that the defect be dangerous, while negligence does not, would be specious. Consequently, it must be deemed inconsistent for a jury to find that a product was not defective for purposes of strict liability, and yet that the product was negligently designed, *i.e.*, was defective, for purposes of establishing liability under a theory of negligence.

It should be noted that in this case, the trial court instructed the jury, contrary to the court of appeals' analysis in *Cassisi,* that "defect" for purposes of § 402A liability, is "a condition *unreasonably dangerous* to the user." Thus, the jury may have been led wrongly to believe that a design defect sufficient to satisfy a negligence claim would not necessarily be dangerous enough to meet strict liability standards. Given the Fifth Circuit's admonition in *Willard* (577 F.2d at 1011) that "[e]ven a jury verdict inconsistent on its face is not inconsistent if it can be explained by assuming the jury reasonably misunderstood the instructions," if we were faced only with an apparent conflict in the jury's findings on the strict liability and negligence claims, we might be able to resolve the inconsistency in light of the somewhat misleading jury instruction. However, when the jury's finding as to the implied warranty claim is coupled with its findings on the negligence and strict liability claims, no coherent means to reconcile the findings remain.

■ In its first finding, the jury denied the plaintiff's implied warranty claim, and in so doing determined that the shower door

---

**2.** The Wisconsin Supreme Court has so held: "where a plaintiff proves negligence—in this case, the lack of ordinary care in the design of a product—there is no doubt that there may be recovery in the event the defective design results in an unreasonably dangerous product, but there may be recovery for the negligent design of a product even though it is not unreasonably dangerous in the 402A sense." *Greiten v. LaDow,* 70 Wis.2d 589, 235 N.W.2d 677, 685 (1975).

was not defective. For purposes of implied warranty, however, defect was defined as "not reasonably fit for the intended use or a reasonably foreseeable use." This definition, unlike that furnished the jury on the second claim pertaining to strict liability, contained no "unreasonably dangerous" component; indeed, it is substantially similar to the *Cassisi* court's characterization of defect for strict liability purposes in terms of whether the product would frustrate the ordinary consumer's expectations. Taken together then, the jury's findings on the plaintiff's first two claims indicate that the shower door was neither dangerously defective nor unfit for its intended use or any reasonably foreseeable use; in other words, the jury would appear to have determined that the door was in no sense defective.

At the same time, the jury found the defendant negligent. Implicit in its finding of negligence is a finding that the shower door was defective. To the extent someone is injured when a shower door breaks, and the jury finds that the shower door maker was at fault for the injury, the inescapable implication is that something was found to be wrong with the door that would not have been wrong had the manufacturer been reasonably careful in making the door.

In short, the jury's first and second findings were that the door was not defective, while its third finding was that the door was defective. Because these findings are irreconcilably contradictory, we must remand for a new trial on the issue of liability.

REVERSED and REMANDED.