[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-10005

Non-Argument Calendar

————————————————

QUWANDA CANNION PHILLIPS,

Plaintiff-Appellant,

*versus*

FEDEX GROUND PACKAGE SYSTEM, INC.,
"Fed Ex" or the "Company",

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cv-02137-RBD-LHP

_____

Before WILSON, JORDAN, and LAGOA, Circuit Judges.

PER CURIAM:

Quwanda Phillips, proceeding *pro se*, appeals the district court's judgment against her, which was entered following a jury trial on her various race-based discrimination and retaliation claims against her former employer, FedEx Ground. Specifically, she asserts that the district court should have remanded the case to state court following FedEx Ground's improper removal, and that the district court erred in granting FedEx Ground's judgment as a matter of law as to her 42 U.S.C. § 1981 discrimination claim and in giving the jury a coercive *Allen* charge, *see generally Allen v. United States*, 164 U.S. 492, 501–02 (1896), during deliberations. Ms. Phillips also asserts that the jury's verdict in favor of FedEx Ground on her Title VII claims was inconsistent and unsupported by the evidence, and thus the district court should have granted her motion to vacate the judgment and grant a new trial.

**I**[1]

Ms. Phillips worked as a part-time package handler for FedEx Ground in Cocoa, Florida, from March of 2013 through her official termination in July of 2017. Starting in October of 2013, Ms.

_____

[1] We assume the parties' familiarity with the facts and procedural history and set out only what is necessary to explain our decision. As to issues not discussed, we summarily affirm.

Phillips began making internal complaints accusing her managers at the time (Ken Thompson and David Antun) of discriminatory conduct and remarks addressed to her and other Black employees. FedEx Ground investigated those complaints and found them to lack merit. Specifically, Ms. Phillips alleged that Mr. Thompson favored white employees in hiring and other employment decisions, and that he—along with Mr. Antun—would sabotage her work by writing her up for unwarranted misloads of her truck. Ms. Phillips believed this sabotage was an attempt to terminate her based on her race and she filed her first of four grievances with the EEOC in October of 2013. In that grievance, she also noted that Mr. Antun allegedly stated that "Blacks are not smart enough to load trucks."

At trial, neither Marquel Kimbrough (another employee) nor Ms. Phillips testified to having directly heard that statement and, in fact, testified that they had not directly heard Mr. Antun make that statement. Ms. Phillips and Mr. Kimbrough did, however, testify that Mr. Antun asked them whether they were affiliated with "the Bloods and Crips" gangs, which both perceived as an inappropriate stereotype based on their race. Mr. Thompson was transferred to another FedEx location in October of 2014 (three years prior to Ms. Phillips' termination), and Mr. Antun was transferred another location in May of 2016 (more than a year prior to her termination).

In October of 2015, Ms. Phillips suffered a knee injury which required certain accommodations. At the time of the injury,

Roberto Springer was Ms. Phillips' sort manager and was responsible for her accommodations. Following her injury, Ms. Phillips was out on medical leave for a period—about a year and a half, only coming into work "on and off"—but eventually returned at some (but not full) capacity, which included weight restrictions. According to Ms. Phillips, Mr. Springer was not responsive to her accommodation requests and would not accept her doctor's notes regarding her absences. Though Ms. Phillips asserted that her doctor put her "out indefinitely" in 2016, she acknowledged that Mr. Springer never told her that she could stay out indefinitely.

In June of 2017, Ms. Phillips gave FedEx Ground a physician assistant's note stating that she should be excused from work "if the left knee bec[ame] ecchymotic." This was the last time Ms. Phillips came into work and she never contacted FedEx Ground thereafter regarding her return. According to FedEx Ground's employees, they made various attempts to contact Ms. Phillips via telephone and mail but never received a response. Accordingly, FedEx Ground determined that Ms. Phillips should be terminated for job abandonment. Ms. Phillips asserts that she did not know she was fired until February of 2019, when she received a letter from the EEOC regarding her termination.

Ms. Phillips filed suit in state court and the case was removed to the district court in November of 2019. Relevant to this appeal, Ms. Phillips asserted claims for discrimination and retaliation under Title VII, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. The case proceeded to a jury trial. After the close of evidence, FedEx Ground

moved for judgment as a matter of law as to all claims, which the district court granted as to Ms. Phillips' § 1981 claim and denied as to her Title VII claims.  Following deliberations, the jury entered a verdict against Ms. Phillips and in favor of FedEx Ground as to those remaining claims.  Based on that verdict, the district court entered judgment against Ms. Phillips, who then moved to set aside or vacate the judgment and for a new trial.  That motion was denied, and the instant appeal followed.

## II

Ms. Phillips first asserts that the district court erred by failing to grant her motion to remand.  Because she did not list the district court's order denying that motion in her notice of appeal, FedEx Ground argues that we lack jurisdiction to address the issue.  We disagree.

A notice of appeal must "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). Our prior caselaw explained that we generally have jurisdiction to review "only those judgments, orders, or portions thereof" that are designated in an appellant's notice of appeal. *See, e.g.*, *Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521, 1528 (11th Cir. 1987). But Rule 3 was amended in 2021, so that now a notice of appeal encompasses all orders that merge into the appealable order. *See* Fed. R. App. P. 3(c)(4).

Ms. Phillips' notice of appeal, filed by since-withdrawn counsel, lists the district court's order granting judgment as a matter of law, the final judgment, and the order on plaintiff's motion to set

aside judgment. The notice of appeal did not list Ms. Phillips' motion to remand, but it did not have to. Under Federal Rule of Appellate Procedure 3(c)(4), the district court's interlocutory remand order merged into its final judgment on appeal, such that it is reviewable on appeal along with that final judgment. *See* Fed. R. App. P. 3(c)(4); Fed. R. App. P. 3 advisory committee's note to 2021 amendment. Moreover, Ms. Phillips, now proceeding *pro se*, explicitly stated in her initial brief that is appealing the district court's failure to remand and there is no indication that her notice of appeal prejudiced or misled FedEx Ground, as FedEx Ground also fully briefed the remand issue. *See Forman v. Davis*, 371 U.S. 178, 181–82 (1962). Accordingly, we have jurisdiction to review her appeal of the district court's remand order.

We review the denial of a motion to remand to state court *de novo*. *Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1328 (11th Cir. 2010). A defendant may remove "any civil action brought in a State court of which district courts . . . have original jurisdiction." 28 U.S.C. § 1441. Federal district courts have original jurisdiction over cases brought under the "[United States] Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A defendant may remove an action from state court "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id.* § 1446(b)(1). "A removing defendant bears the burden of proving proper federal jurisdiction," *Leonard v. Enter. Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002), and a plaintiff may seek remand back to state court based on two

grounds—a lack of subject matter jurisdiction or a procedural defect in the removal of the case. *See Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1043–44 (11th Cir. 2001).

The Supreme Court has unanimously held that "a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if the federal jurisdictional requirements are met at the time judgment is entered." *Caterpillar v. Lewis*, 519 U.S. 61, 64 (1996). It cannot be disputed that Ms. Phillips' complaint—which asserted claims under Title VII (42 U.S.C. § 2000e) and 42 U.S.C. § 1981—established federal question jurisdiction. As such, because "timeliness of removal is a procedural defect—not a jurisdictional one," any untimeliness in the filing of the notice of removal would be an insufficient basis to vacate the judgment and remand for a new trial. *See Moore*, 623 F.3d at 1329 (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751–52 (11th Cir. 2010)).

### III

Ms. Phillips next asserts that the district court erred in granting FedEx Ground's motion for judgment as a matter of law on her § 1981 discrimination claim.

Rule 50(a) permits a party to move, during trial, for judgment as a matter of law before a verdict has been returned. *See* Fed. R. Civ. Pro. 50(a). A district court may grant the motion before submitting the case to the jury if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. *See id.*

We review the grant of a judgment as a matter of law *de novo*, applying the same legal standards as used by the district court. *See Bishop v. City of Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004). Those standards require us to consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). We consider all evidence, and the inferences drawn therefrom, in the light most favorable to the nonmovant. *See Bishop*, 361 F.3d at 609. "If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion was properly granted." *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

Title VII of the Civil Rights Act of 1964 outlaws employment discrimination because of "race, color, religion, sex, or national origin." 42 U.S. § 2000e-2(a)(1). Likewise, § 1981 prohibits employers from intentionally discriminating based on race in employment contracts. *See Tynes v. Fla. Dep't of Juvenile Justice*, 88 F.4th 939, 944 (11th Cir. 2023). To prove a claim under either statute, a plaintiff can use direct evidence, circumstance evidence, or both. *See id.* Nonetheless, "[u]nlike a Title VII discrimination claim—where a lesser 'motivating factor' standard sometimes applies—a § 1981 claim requires proof that race was a but-for cause of [the] termination." *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1013, 1017 (2020)). This does not require a plaintiff

to prove that race was the *exclusive* cause of his or her termination, but it does require a plaintiff to prove that but for his or her race, the plaintiff would not have been terminated. *See Ossmann*, 82 F.4th at 1014.

Thus, to survive FedEx Ground's motion for judgment as a matter of law as to her § 1981 claim, Ms. Phillips needed to have produced enough evidence during trial to permit a reasonable jury to find that, had she not been Black, she would not have been terminated. *See id.* Both below and on appeal, Ms. Phillips offers the alleged statement made by Mr. Antun that "Black workers are not smart enough to load trucks" as "direct evidence" of intentional discrimination. *See* Appellant's Br. at 6.[2]

Even if we were to consider this direct evidence—we would likely not, *see Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020)—this was not part of the record evidence at trial. Ms. Phillips admitted that she never heard Mr. Antun make this comment, and Mr. Kimbrough also testified that the only direct statement he heard Mr. Antun make was the "Bloods and Crips" statement made years before Ms. Phillips' termination. *See* D.E. 147 at 160–61; D.E. 148 at 116–19, 148.

Ms. Phillips did not produce adequate circumstantial evidence from which a reasonable jury could infer that intentional

---

[2] Ms. Phillips' initial brief seems to focus on her Title VII claim with respect to the district court's judgment as a matter of law, but the district court did not grant FedEx Ground's motion on those claims. We read her *pro se* argument liberally.

discrimination was the but-for cause of her termination.  Nor did she prove that FedEx Ground's non-discriminatory reason for her termination—job abandonment—was pretextual.  The statements referred to above, as well as the purported sabotage regarding the written-up misloads, all occurred years before her termination by managers that were transferred to other facilities by the time she was ultimately terminated.  She admitted that she never returned to work for nearly two years, nor did she reach out once to FedEx Ground once that time period.

Liberally construed, Ms. Phillips also asserts that because the jury ultimately found that, under her Title VII discrimination claim, race was a "motivating factor" in FedEx Ground's adverse employment action, it was therefore error for the district court to not have allowed the § 1981 claim to proceed to the jury.  But the Supreme Court has explained that Title VII's statutory "motivating factor" standard is inapposite to § 1981 claims. *See Comcast Corp.*, 140 S. Ct. at 1017.  Indeed, it is a lower burden.  And here, the fact that the jury ultimately found that FedEx Ground would have fired her even had it not considered her race as a motivating factor, actually cuts against her but-for causation argument.

In sum, because Ms. Phillips failed to establish evidence at trial from which a reasonable jury could infer that her race was the but-for cause of her termination, the district court did not err in granting FedEx Ground's motion for judgment as a matter of law as to that claim.

**IV**

After about three hours of deliberations, the jury in Ms. Phillips' trial indicated that they were deadlocked. The district court then gave an *Allen* charge, *see Allen*, 164 U.S. at 501–02, instructing the jury to keep deliberating until a verdict was reached. As her final argument, Ms. Phillips asserts that this *Allen* charge was coercive, and therefore, an abuse of discretion. *See Rubinstein v. Yehuda*, 38 F.4th 982, 992 (11th Cir. 2022).

While sometimes controversial, *see id.* at 996, our precedent condones the practice of giving an *Allen* charge as long as the district court does not "coerce any juror to give up an honest belief." *United States v. Anderson*, 1 F.4th 1244, 1269 (11th Cir. 2021) (internal quotations omitted). Whether an *Allen* charge is coercive depends on two things: "the language of the charge and the totality of the circumstances under which it was delivered." *Id.*

We reject Ms. Phillips' argument that the language used by the district court was coercive, as it was nearly identical to the pattern Eleventh Circuit jury instruction. *See Rubenstein*, 38 F.4th at 996. To the extent Ms. Phillips takes issue with the pattern language indicating that jurors in the minority should consider whether their beliefs are reasonable, we have approved of such language on multiple occasions and find no error here today. *See id. See also Burkhart v. R.J. Reynolds Tobacco Co.*, 884 F.3d 1068, 1085 n.5 (11th Cir. 2018).

In reviewing the totality of the circumstances, five are particularly (but not exclusively) relevant to the coerciveness analysis:

(1) the total length of deliberations; (2) the number of times the jury reported being deadlocked and was instructed to resume deliberations; (3) whether the judge knew of the jury's numerical split when he instructed the jury to continue deliberating; (4) whether any of the instructions implied that the jurors were violating their oaths or acting improperly by failing to reach a verdict; and (5) the time between the final supplemental instruction and the jury's verdict. *See Brewster v. Hetzel*, 913 F.3d 1042, 1053 (11th Cir. 2019). We have held that fifteen minutes of deliberation between an *Allen* charge and the verdict did not indicate coercion. *See Rubinstein*, 38 F.4th at 997.

Upon review, the circumstances here do not raise any spectre of coercion. The jury deliberated for an additional two hours after receiving the *Allen* charge and only reported being deadlocked once. There is also no indication that the district court knew of the jury's numerical split when it gave the charge, nor was there any implication from the instructions that the jurors were violating their oaths or otherwise acting improperly. The district court, therefore, did not abuse its discretion.

## V

Following the jury's verdict in favor of FedEx Ground, Ms. Phillips moved to vacate the judgment and for a new jury trial. Specifically, Ms. Phillips asserted that the jury's verdict as to her Title VII discrimination and retaliation claims was inconsistent and against the weight of the evidence produced at trial.

Under Rule 59(e), a district court may "alter or amend a judgment" that is based on "manifest errors of law or fact." *Metlife Life & Annuity Co. of Conn. v. Akpele*, 886 F.3d 998, 1008 (11th Cir. 2018); Fed. R. Civ. P. 59(e). Additionally, under Rule 59(a), a district court may grant a motion for a new trial if it believes that the verdict rendered was contrary to the great weight of the evidence or will result in a miscarriage of justice. *See Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987). We review a district court's denial of either motion for an abuse of discretion. *See McGinnis v. Am. Home Mortg. Servicing, Inc.*, 901 F.3d 1282, 1288 (11th Cir. 2018); *Akpele*, 886 F.3d at 1003.

We disagree with Ms. Phillips' contention that the jury verdict as to her Title VII claims was inconsistent for two reasons. First, Ms. Phillips (through counsel) did not timely raise the purported inconsistency with the district court. Second, and in any event, the verdict was not legally inconsistent.

A verdict is inconsistent when there is "no rational, non-speculative way to reconcile . . . two essential jury findings" *Witt v. Norfe, Inc.*, 725 F.2d 1277, 1278 (11th Cir. 1984) (internal quotations and citation omitted). A district court "must make all reasonable efforts to reconcile an inconsistent jury verdict and if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1489 (11th Cir. 1983). *See also Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962) ("When there is a view of the case that makes the jury's answers to

special interrogatories consistent, they must be resolved that way.").

But "[a] party must object to a verdict as inconsistent before the jury has been dismissed." *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1259 (11th Cir. 2015) (citing *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1419–20 (11th Cir. 2011)). Indeed, failure to object to an inconsistent verdict before the jury is excused forfeits the objections. *See Reider*, 793 F.3d at 1259. *See also Mason v. Ford Motor Co.*, 307 F.3d 1271, 1275–76 (11th Cir. 2002) ("[The defendant's] failure to raise its objection before the jury was discharged waived the right to contest the verdicts on the basis of alleged inconsistency."). "The reason for this particular raise-it-or-lose-it rule is that if the inconsistency is raised before the jury is discharged, the jury can be sent back for further deliberations to resolve the inconsistency in its verdict or interrogatory answer," but "that is not possible" once the jury is gone. *See Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1225 (11th Cir. 2012). Ms. Phillips' counsel did not object either to the verdict form itself or the jury's verdict as inconsistent until her post-trial motion was filed on July 11, 2022—long after the jury had been discharged.

In any event, the jury's verdict on the Title VII claims can be reconciled and is therefore legally consistent. The verdict was also supported by the evidence.

Under Title VII, it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such in-dividual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e–2(a)(1).  An employer may not retaliate against an employee because she has opposed any practice made unlawful under that law, and a protected activity means an employee participated in fil-ing a formal complaint with the EEOC or in the investigation of proceedings under Title VII.  *See* 42 U.S.C. § 2000e-3(a); *EEOC v. Total Sys. Serv. Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).

In a Title VII race discrimination case, even if the plaintiff provides evidence that the defendant, in making an adverse em-ployment decision, was motivated in part by an impermissible con-sideration, such as race, the defendant can prevail if it can prove by a preponderance of the evidence that it would have made the same decision even in the absence of the discriminatory consideration. *See* 42 U.S.C. § 2000e-2(m); *Pullman v. Tallapoosa Cnty. Jail*, 185 F.3d 1182, 1184 (11th Cir. 1999).  Thus, defendants in Title VII employ-ment discrimination cases may prove as an affirmative defense that they would have reached the same employment decision even in the absence of bias.  *See* 42 U.S.C. § 2000e-5(g)(2)(B); *Pullman*, 185 F.3d at 1184.

To establish a claim of retaliation under Title VII, a plaintiff must prove that she engaged in statutorily protected activity, she suffered a materially adverse action, and there was some causal re-lation between the two events.  *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  After the plaintiff has estab-lished the elements of a claim, the employer has an opportunity to

articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability. *See id.* The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct. *See id.*

Regarding her Title VII discrimination claim, the jury found that FedEx Ground took an adverse employment action against Ms. Phillips and that her race was a motivating factor in that adverse action. But, per the verdict, the jury also found that FedEx Ground would have taken the same adverse action against Ms. Phillips even if FedEx had not taken her race into account. As to her Title VII retaliation claim, the jury found that Ms. Phillips engaged in protected activity, but that FedEx Ground did not terminate Ms. Phillips because of that protected activity.

These findings are not inconsistent. It is reasonable that a jury could conclude—based on the evidence introduced by the parties at trial—that FedEx Ground would have fired Ms. Phillips for reasons other than her race (such as her abandonment of the job), and that, as such, her internal complaints and EEOC claims were not the cause of her ultimate termination. Though the jury also found that race was a motivating factor in the adverse actions taken by FedEx Ground, it does not necessarily follow that her race-based complaints were the reason she was fired.[3] Indeed, there is overlap

---

[3] Ms. Phillips introduced evidence at trial that she was subject to various actions, including unwarranted write-ups and refusals for injury

between FedEx Ground's "same decision" affirmative defense and its articulation of a legitimate, nonretaliatory reason for Ms. Phillips' termination.

The district court did not abuse its discretion in denying Ms. Phillips' request to set aside or vacate the judgment, or the request to grant a new trial.

## VI

We affirm the district court's judgment against Ms. Phillips and its order denying her motion to set aside that judgment and/or for a new trial.

**AFFIRMED.**

---

accommodations, which could have been considered adverse by the jury (and indeed, were argued to have been adverse by Ms. Phillips).