COURT OF APPEALS
DECISION
DATED AND FILED

June 25, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2074-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF5

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

TIMMY LANSING JOHNSON,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment and an order of the circuit court for Dodge County: KRISTINE A. SNOW, Judge. *Affirmed.*

        Before Graham, P.J., Nashold, and Taylor, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Timmy Lansing Johnson appeals a judgment of conviction for battery by a prisoner as a repeater and an order denying his motion for postconviction relief.  On appeal, Johnson argues that he is entitled to a new trial because the circuit court erred when it determined that he was competent to represent himself at trial and when it directed a verdict against him in the responsibility phase of his bifurcated trial.  Johnson also argues that he is entitled to resentencing because trial counsel provided ineffective assistance of counsel at his sentencing and that the court erroneously exercised its discretion at sentencing by imposing a consecutive sentence.  We reject Johnson's arguments and affirm.

## BACKGROUND

¶2     Johnson was an inmate at Waupun Correctional Institution.  In 2019, as he was receiving his evening medication, a correctional officer observed Johnson attempting to conceal the medication in his upper lip rather than ingesting it.  The correctional officer informed Johnson that he would be receiving "a conduct report for misuse of medication."  Later, Johnson approached the correctional officer and asked if this meant he would be "going to the hole."  The officer told Johnson that he would speak with him "after the med line was finished" and ordered him to step into a different area.  Johnson did not comply with the officer's directive, and he began "violently punching and swinging both arms with closed fists" at a different correctional officer standing nearby.  Johnson hit the "head and facial area" of this officer "approximately 20-30 times."

¶3     The State charged Johnson with battery by a prisoner as a repeater. *See* WIS. STAT. §§ 940.20(1), 939.62(1).[1]  Johnson, by his counsel, entered pleas of not guilty and not guilty by reason of mental disease or defect (NGI).

¶4     Because of Johnson's NGI plea and pursuant to WIS. STAT. § 971.16, the circuit court ordered pretrial mental examinations of Johnson by three court-appointed experts.  In reports that they submitted to the court, all three experts opined that Johnson did not meet the criteria for suffering from a mental disease or defect at the time he committed the charged offense.  Specifically, the experts opined that there was not "sufficient data" to support that Johnson, at the time of the battery, lacked substantial capacity to conform his conduct to law or appreciate the wrongfulness of his conduct due to a mental disease or defect.  The State indicated that it intended to call at least one of the experts at trial.

¶5     Johnson's trial was held in July 2022 and was bifurcated pursuant to WIS. STAT. § 971.165 (providing that a bifurcated trial is required when a defendant enters a plea of not guilty and a plea of NGI).  In a bifurcated trial, the first phase of the trial concerns the defendant's guilt and is the same as a regular criminal trial where the State has the burden to prove guilt beyond a reasonable doubt.  *See* § 971.165(1).  In contrast, the second phase concerns whether the defendant is to be relieved of responsibility for the criminal conduct due to the defendant's mental disease or defect, and in that phase, the burden of proof is on the defendant.  *See* § 971.165(3).  We provide a general overview of what occurred during Johnson's bifurcated trial in this background section and additional detail as needed in the discussion section.

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

¶6      On the morning that Johnson's bifurcated trial was scheduled to begin, Johnson informed the circuit court that he wished to represent himself at trial.  The court conducted a lengthy colloquy with Johnson, after which it determined that Johnson was "making a knowing, intelligent, and voluntary waiver of [his] right to counsel" and that Johnson was competent to represent himself.  As part of its decision, the court ordered Johnson's attorney to act as stand-by counsel at trial.

¶7      Johnson's trial commenced with the guilt phase, and the State called a number of witnesses in its case-in-chief, including the victim correctional officer and several other correctional officers who had witnessed the attack.  Johnson was the sole witness in his own defense, and before he testified, he requested that stand-by counsel act as adversary counsel and take over for the remainder of the trial, which the circuit court allowed.  During his direct examination, Johnson admitted to engaging in a physical altercation and punching the correctional officer.  The jury found Johnson guilty of battery by a prisoner as a repeater.

¶8      Johnson's trial then proceeded to the responsibility phase to determine whether Johnson, at the time of the battery, "ha[d] a mental disease or defect" and, as a result, "lacked substantial capacity either to appreciate the wrongfulness of the conduct or to conform that conduct to the requirements of law."  *See* WIS JI—CRIMINAL 603.  Johnson was the sole witness for the defense at the responsibility phase of the trial, and he testified that he had been diagnosed with various mental health issues over the years.  He testified that on the day of the battery, he had not been taking his medication, tramadol, and as a result, he was experiencing "racing thoughts" and "paranoia," and was hearing "spirits."  Johnson stated that he thought the officer he attacked was trying to kill him.  When asked whether the "mental health issues" that he was experiencing that day

made him "able to conform [his] conduct to the requirements of law" or "appreciate the wrongfulness of his conduct," Johnson responded that these symptoms rendered him incapable of doing so. When asked to elaborate on "why" this was the case, Johnson again referenced his racing thoughts, paranoia and that he was not feeling like himself.

¶9 On cross-examination, the State asked Johnson whether he had any medical records to corroborate the various mental health diagnoses that he alleged he had, and Johnson acknowledged that he did not have any such records. In addition, the State asked Johnson about his conduct both immediately before and immediately after the battery. Among other things, Johnson answered that he was able to successfully comply with officer directives and prison rules both before and after the battery; he was able to ask questions to officers that showed that he understood that violating prison medication rules had consequences; and he was able to understand that other prison guards were approaching while he was attacking the officer, which resulted in Johnson stopping the conduct.

¶10 After Johnson presented his testimony and the defense rested, the State moved for a directed verdict, arguing that Johnson had not provided "sufficient testimony" to allow a reasonable jury to find that he was not responsible for the battery due to mental disease or defect. Following argument from both sides, the circuit court granted the State's motion.

¶11 A judgment of conviction was entered, and Johnson's sentencing hearing was held in August 2022. At the hearing, both the prosecutor and defense counsel erroneously told the circuit court that pursuant to a state statute that is not clearly identified in the record, the court had to impose a sentence consecutive to the sentences that had already been imposed on Johnson which he was then

serving. After considering various sentencing factors, the court sentenced Johnson to five years of initial confinement and three years of extended supervision and ordered that the sentence run consecutively to any previously imposed sentence.

¶12 Johnson filed a motion for postconviction relief, which the circuit court denied following a hearing. Johnson appeals.

## DISCUSSION

¶13 On appeal, Johnson reiterates his postconviction arguments that he is entitled to a new trial because the circuit court erred in determining that he was competent to represent himself at trial and in granting a directed verdict against him at the responsibility phase of his bifurcated trial. He also argues that he is entitled to resentencing because trial counsel was constitutionally ineffective at his sentencing and that the court erroneously exercised its discretion in imposing a consecutive sentence. We address Johnson's arguments in turn.

### I. Competency for Self-Representation

¶14 A criminal defendant has a constitutional right to self-representation. *See Faretta v. California*, 422 U.S. 806, 807, 822 (1975); *State v. Klessig*, 211 Wis. 2d 194, ¶8, 564 N.W.2d 716 (1997); U.S. CONST. amend. VI; WIS. CONST. art. I. When a defendant seeks to represent himself, the circuit court must undertake a two-part inquiry to determine that the defendant "(1) has knowingly, intelligently, and voluntarily waived the right to counsel, and (2) is competent to proceed pro se." *State v. Marquardt*, 2005 WI 157, ¶56, 286 Wis. 2d 204, 705 N.W.2d 878. If both of these criteria are satisfied, the court "must allow" the defendant to represent himself. *See Klessig*, 211 Wis. 2d 194, ¶9. On appeal,

6

Johnson solely challenges the second part of the inquiry: whether he was competent to represent himself.[2]

¶15    When considering a defendant's competency to proceed pro se, the circuit court must determine whether the defendant "possesses the minimal competence necessary to conduct his own defense." *See **State v. Pickens***, 96 Wis. 2d 549, 568-69, 292 N.W.2d 601 (1980), *overruled, in part, on other grounds by **Klessig***, 211 Wis. 2d 194, ¶13.  Although the standard to determine competency for self-representation is "higher" than the standard of whether a defendant is competent to stand trial,[3] defendants of "average ability and intelligence" should not be prevented from representing themselves, "unless 'a specific problem or disability can be identified which may prevent a meaningful defense from being offered.'" ***Klessig***, 211 Wis. 2d 194, ¶24 (quoting ***Pickens***, 96 Wis. 2d at 569).  In determining whether a defendant is competent to represent themselves, "the circuit court should consider factors such as 'the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury.'"  ***Id.*** (quoting ***Pickens***, 96 Wis. 2d at 569).  The competency determination "rest[s] to a large extent upon the judgment and experience of the trial judge." ***Id.***  Thus, we will uphold the circuit court's determination that a defendant is competent to proceed pro se unless it is "totally unsupported by the facts apparent in the record."

---

[2] Because Johnson does not argue on appeal that his waiver to his right to counsel was not knowing, intelligent, and voluntary, we do not address this issue further.

[3] The standard for determining competency to stand trial is whether the defendant is able to understand the proceedings and to assist in his own defense.  *See* WIS. STAT. § 971.13(1) ("No person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures.").

*Pickens*, 96 Wis. 2d at 570; *see also* *Marquardt*, 286 Wis. 2d 204, ¶21 (providing that "[w]e review a circuit court determination of whether a defendant is competent to proceed pro se under what is 'essentially a clearly erroneous standard of review'" (citation omitted)).

¶16　Here, the circuit court's determination that Johnson was competent to proceed pro se was not "totally unsupported by the facts apparent in the record." *Pickens*, 96 Wis. 2d at 570. The court conducted a lengthy and robust colloquy with Johnson, in which it inquired about his education, his fluency in English, his physical and mental state, his medication use, his understanding of the proceedings, and his preparation to proceed pro se. Johnson told the court, among other things, that he could read and write in the English language; that he had a high-school education; and that he had completed some college courses. The court inquired into the nature of the medication that Johnson was taking, and Johnson explained that the medication was prescribed to "[h]elp [him] focus" and "calm [him] down," and that it did not "impair [his] ability to understand the proceedings." Although Johnson acknowledged that he had not always been in the best place mentally at earlier points prior to trial, he explained that doctors had recently "upped" his medication dosage and that he had a "clear head," was of "sound mind," and was able to represent himself.

¶17　Moreover, in response to the circuit court's questions about the nature of the proceedings, Johnson exhibited an understanding that his trial was bifurcated and the State had the burden of proof in the first, guilt phase of the trial; that he had the burden of proof in the second, responsibility phase of the trial; and further, that it was his responsibility to hear the prosecution's evidence, ask questions, and present evidence on his own behalf. Johnson also acknowledged that it was "more difficult" to proceed without an attorney, but explained that he

8

had prepared for trial by reading law books, consulting with his family attorney, and reviewing the discovery materials.

¶18    The circuit court found that Johnson's responses were "thoughtful" and "understandable," and it determined that Johnson's "psychological state [was] such that [he was] able to represent [him]self effectively." This determination was not clearly erroneous. The court was in the "best position" to "observe [Johnson], his conduct and his demeanor, and to evaluate his ability to present at least a meaningful defense." *Pickens*, 96 Wis. 2d at 568. The record here, as shown above, supports the court's determination that Johnson possessed at least "the minimal competence necessary to conduct his own defense." *Id.* at 568-69.

¶19    Johnson makes three arguments to the contrary. We consider and reject each.

¶20    Johnson first points out that the circuit court asked Johnson a number of questions about the law that Johnson did not answer correctly. These questions concerned character evidence, prior bad-acts evidence, motions in limine, and the number of jurors that Johnson needed to convince in the responsibility phase of his trial, among other things. Johnson argues that his failure to answer these questions correctly demonstrates that he "did not understand the proceeding sufficient[ly] to allow [for] self-representation."

¶21    Although it is true that Johnson was not aware of the specific rules surrounding certain legal and evidentiary concepts, the circuit court was only required to conclude that Johnson possessed "the minimal competence necessary" for self-representation. *See id.* at 568-69. Here, the record shows that Johnson broadly understood that there were rules that governed evidence and the trial generally; that he had to follow these rules; and that he may be prohibited from

9

presenting evidence and asking certain questions based on these rules. The court could have reasonably determined that Johnson's general grasp of the process and proceeding was sufficient to allow for self-representation. Moreover, given that Johnson's attorney remained present as stand-by counsel, with the understanding that the attorney could help Johnson navigate legal issues at trial, we are not persuaded that the court erred in determining that Johnson was competent to proceed pro se in spite of his ignorance of some legal rules and concepts.

¶22 Johnson next argues that the circuit court's determination is undermined by concerns the prosecutor voiced about Johnson's "ability to represent himself." According to Johnson, because the prosecutor was in "an equally opportune position" as the court to observe Johnson's conduct and demeanor, the prosecutor's concerns should carry "some weight" in determining whether Johnson had the minimum competency required to proceed pro se.

¶23 We disagree. Johnson cites no legal authority to support the proposition that the prosecutor's opinion should carry "some weight" in the analysis of whether a defendant is competent to represent himself. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (a court need not consider arguments that are unsupported by legal citations or are otherwise undeveloped). Moreover, when read in context, it appears that the prosecutor's concerns were less about Johnson's competency and more about his actions throughout the case, which the prosecutor believed demonstrated that Johnson was "malingering" and attempting to repeatedly "delay this case."

¶24 Lastly, Johnson argues that the circuit court's determination was erroneous because the court did not properly account for "the history of competency concerns" in Johnson's case. We disagree. The court was tasked

with evaluating whether Johnson was competent to proceed pro se *at the time of trial*, when Johnson requested the court to do so. It is not necessarily pertinent that Johnson may have exhibited behavior that raised questions about his competency to be tried at an earlier point in his case.

¶25 Accordingly, for the reasons explained above, we conclude that the circuit court did not clearly err when it determined that Johnson was competent to represent himself at trial.

## II. Directed Verdict

¶26 We now turn to Johnson's argument that the circuit court erred in granting a directed verdict in the responsibility phase of the bifurcated trial. For reasons we now explain, we conclude that the court did not err.

¶27 As noted, when a criminal defendant enters pleas of not guilty and NGI, WIS. STAT. § 971.165 requires a bifurcated trial. The first phase of the trial determines guilt, and the second phase determines whether the defendant will be held responsible for the criminal conduct. *See* WIS. STAT. §§ 971.15, 971.165. A defendant is not responsible for criminal conduct when, as a result of a mental disease or defect, the defendant lacked substantial capacity either to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law at the time of the criminal conduct. *See* § 971.15(1).

¶28 The defendant bears the burden to prove that the defendant is not responsible for the criminal offense due to mental disease or defect "to a reasonable certainty by the greater weight of the credible evidence," WIS. STAT. § 971.15(3), and may not have that issue presented to a jury without making a "prima facie case," *State v. Kazee*, 192 Wis. 2d 213, 223, 531 N.W.2d 332 (Ct.

App. 1995). A directed verdict against a defendant is proper if "there is no credible probative evidence toward meeting the burden of establishing the defense of not guilty by reason of mental disease or defect by a preponderance of the evidence after giving the evidence the most favorable interpretation in favor of the accused asserting the defense." *State v. Leach*, 124 Wis. 2d 648, 663, 370 N.W.2d 240 (1985). On appeal from a decision to grant a motion for directed verdict, the standard of review "is whether the [circuit] court was clearly wrong." *Id.* at 665 (quoting *Greiten v. La Dow*, 70 Wis. 2d 589, 598, 235 N.W.2d 677 (1975)).

¶29 Here, the circuit court concluded that a directed verdict was appropriate with respect to Johnson's defense of not guilty by reason of mental disease or defect because it found that Johnson failed to provide sufficient evidence that "the jury could rely upon" to make a determination in his favor. Although the court noted that Johnson provided testimony that he had been diagnosed with various mental health disorders, the court pointed out that Johnson did not support his testimony with records or any other corroborating evidence. The court also reasoned that even when crediting Johnson's testimony that he "wasn't himself," heard "spirits," and had "paranoia" on the day of the battery, Johnson did not explain how these symptoms made him unable to "conform his actions … to the requirements of law" or appreciate the wrongfulness of his conduct.

¶30 We conclude that the circuit court was not "clearly wrong" for directing a verdict against Johnson under these circumstances. As noted, Johnson had the burden to present sufficient evidence on two elements: that he had a "mental disease or defect" at the time of the battery; and that "[a]s a result of the mental disease or defect," he lacked "substantial capacity" to conform his conduct

12

to law or appreciate the wrongfulness of his conduct. *See* WIS JI—CRIMINAL 605; *State v. Maggett*, 2014 WI 67, ¶39, 355 Wis. 2d 617, 850 N.W.2d 42. Johnson chose to carry this burden solely with his own testimony. Although expert testimony is not an indispensable prerequisite to an NGI defense, our supreme court has explained that "[i]n only an exceptional case with extraordinary facts may a defendant carry his burden in the responsibility phase of a criminal trial by relying solely on his own testimony." *Id.*, ¶7. This is no such case.

¶31 As the circuit court emphasized, Johnson did not provide any records, medical or otherwise, to establish or support that he had "a mental disease or defect" at the time of the battery. Instead, with respect to this first element, Johnson testified about various symptoms he alleged to be experiencing that day, among them, "paranoia," "racing thoughts," and hearing "spirits." Although this is no small assumption, we assume that Johnson's trial testimony was sufficient on its own to meet his burden to provide "credible, probative evidence" with respect to this first element. *See Leach*, 124 Wis. 2d at 663. In other words, we assume that a reasonable jury may have inferred that the symptoms that Johnson described in his testimony were the result of a mental disease or defect that Johnson had at the time of the battery. *See* WIS JI—CRIMINAL 605 ("Mental disease or defect is an abnormal condition of the mind which substantially affects mental or emotional processes.").

¶32 However, even making this assumption in Johnson's favor, as the circuit court noted, Johnson did not explain how these various symptoms made him unable to conform his conduct to the law or appreciate the wrongfulness of his conduct. Put another way, it does not necessarily follow that because Johnson experienced "paranoia" and "racing thoughts" and heard "spirits," that he would lack substantial capacity to conform his conduct to the law or appreciate the

wrongfulness of his conduct. Many people suffer from mental illness and retain the capacity to understand and control their conduct. Thus, it was incumbent on Johnson to provide some evidence of a link between the symptoms he was experiencing and his capacity at the time of battery. *See Leach*, 124 Wis. 2d at 664 (juries may not be left to "speculat[e]," "conjecture," or "theorize" as to an ultimate fact based on a "mere possibility" (citation omitted)).

¶33    At best, Johnson testified that the spirits he heard made him believe that the correctional officer he assaulted was "going to kill [him]." However, Johnson did not elaborate on this claim in any meaningful way. The circuit court also had appointed three experts to evaluate Johnson—each of whom had completed and filed reports with the court in which they opined that Johnson did not lack capacity—and the court was aware that the State intended to call at least one of these experts to testify at trial. Therefore, we conclude that the court was not "clearly wrong" when it determined that Johnson could not meet his burden based on his testimony alone. *See Maggett*, 355 Wis. 2d 617, ¶¶50-51 (concluding that the circuit court did not err in determining that the defendant could not meet his burden with his testimony alone in part because "the court knew that the State had substantial evidence," the "most detrimental" being an expert that "was prepared to testify for the State").

## III.  Resentencing

¶34    Johnson argues that he is entitled to resentencing because his trial counsel provided ineffective assistance of counsel at his sentencing hearing and that the court erroneously exercised its discretion in imposing a consecutive sentence. We address Johnson's arguments about resentencing in that order.

## A. Ineffective Assistance of Counsel

¶35     A defendant has the right to effective assistance of counsel at sentencing. *Darden v. Wainwright*, 477 U.S. 168, 184 (1986). To succeed on a claim of ineffective assistance of counsel, a defendant has the burden to prove that trial counsel's performance was deficient, and also that the deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶36     To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding"—in this case, the sentencing hearing—"would have been different." *Id.* at 694; *see also* *State v. Anderson*, 222 Wis. 2d 403, 408, 588 N.W.2d 75 (1998). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶37     Here, Johnson argues that trial counsel was constitutionally ineffective for "asserting that the circuit court had to impose a consecutive sentence." Johnson points out that counsel's erroneous assertion was based on counsel's misinterpretation of a state statute, and he argues that the "[f]ailure to understand controlling authority is deficient performance as a matter of law." Johnson further argues that he was prejudiced by counsel's error because it deprived Johnson of "any opportunity … to receive a concurrent sentence." In other words, the argument is that had counsel understood that the court could impose a concurrent sentence and argued for a concurrent sentence, there is a reasonable probability that the result of Johnson's sentencing would have been

different. That is, there is a reasonable probability that the court would have imposed a concurrent sentence, rather than a consecutive sentence.

¶38 We disagree. Even assuming that trial counsel's failure to correctly understand the law constituted deficient performance, we are not persuaded that there is a reasonable probability that the result of Johnson's sentencing hearing would have been different. At the postconviction hearing, the circuit court explained that based on "the seriousness of the offense" and the need to deter "people in the prison population" from committing similar acts, its intent "was to have additional time for Mr. Johnson to serve beyond whatever he was serving in prison already." The court further explained that "counsel informing me that it had to be consecutive really didn't play a factor into my decision making, and it would have been a consecutive sentence anyway, essentially in order to affect the results that I wanted in that particular case." Under these circumstances, our confidence in the outcome of Johnson's sentencing is not undermined.

¶39 Moreover, our conclusion that the result of the sentencing hearing would not have been different is bolstered when we consider the argument that trial counsel did make at Johnson's sentencing. Although counsel was under the mistaken impression that he could not argue for a concurrent sentence, counsel argued for a sentence that was close to that in substance. Specifically, counsel asked the court to order an "imposed and stayed sentence" and "place [Johnson] on probation," the effect being that Johnson would not be required to serve any additional confinement time, unless he violated the conditions of his probation. In other words, the court was presented with a sentencing option that did not automatically result in additional confinement time. Given that the court chose

not to exercise that option, we are not persuaded that, but for counsel's error, the outcome of the sentencing hearing would have been different.[4]

## B. Exercise of Discretion

¶40 Lastly, Johnson argues that he is entitled to resentencing on the ground that the circuit court "failed to exercise discretion in ordering a consecutive sentence." Specifically, Johnson contends that the court was required by law to provide an on-the-record explanation of why the sentence imposed was consecutive, and that because the court did not do so, it erroneously exercised its discretion. In support of his argument, Johnson cites to our decision in *State v. Hall*, 2002 WI App 108, ¶8, 255 Wis. 2d 662, 648 N.W.2d 41, in which we stated that, "[i]n sentencing a defendant to consecutive sentences, the trial court must provide sufficient justification for such sentences and apply the same factors concerning the length of a sentence to its determination of whether sentences should be served concurrently or consecutively."

---

[4] In his reply brief, Johnson also argues that trial counsel's error prejudiced him because he was deprived of the opportunity to argue the disposition of his choosing, and that the prejudice was "not the ultimate sentence being consecutive." As we understand it, he seems to be arguing that he did not have to establish a reasonable probability that he would have received a different sentence.

As a general rule, we will not "consider issues raised by appellants for the first time in a reply brief." *See Swartwout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981). Even so, Johnson's argument appears to be somewhat at odds with the legal standard. As stated, the legal standard requires us to consider whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding"—in this case, the sentencing hearing—"would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). Thus, our task requires us to consider counsel's error in light of the outcome. As we explain in the text, even if Johnson's counsel had understood the law correctly and argued for a concurrent sentence, we are not persuaded that there is a reasonable probability of a different outcome—*i.e.*, the imposition of a sentence that was not consecutive.

¶41    Johnson's argument is unavailing. Although at first blush *Hall* may appear to support Johnson's argument, in subsequent decisions, we have rejected arguments that were almost identical to Johnson's and explained that such interpretations of *Hall* are not sound. *See, e.g.*, *State v. Berggren*, 2009 WI App 82, ¶45, 320 Wis. 2d 209, 769 N.W.2d 110. In *Hall*, we determined that the circuit court *in that case* erroneously exercised its discretion because it provided inadequate reasons for the consecutive sentences it imposed. *See Hall*, 255 Wis. 2d 662, ¶5. However, we did not establish in *Hall* "a new procedural requirement at sentencing that the [circuit] court [must] state separately why it chose a consecutive rather than a concurrent sentence." *Berggren*, 320 Wis. 2d 209, ¶45 (explaining the *Hall* decision). Instead, *Hall* "emphasized the well-settled right of defendants to have the relevant and material factors influencing their sentences explained on the record." *Id.*

¶42    Here, the circuit court considered the relevant and material factors on the record when it imposed Johnson's sentence. Specifically, the sentencing transcript shows that the court considered, among other things, the gravity of the offense, the protection of the public, Johnson's character, and his rehabilitative needs. Although the court did not explicitly articulate its reasoning for imposing a consecutive rather than a concurrent sentence during the sentencing hearing, such an explanation was not required. And, given that the court provided "a rational and explainable basis" for Johnson's sentence, we are not persuaded that it erroneously exercised its discretion. *See McCleary v. State*, 49 Wis. 2d 263, 276-77, 182 N.W.2d 512 (1971).

## CONCLUSION

¶43     For the reasons outlined above, the judgment of conviction and postconviction order are affirmed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.